GEORGE M. MILLER et al.

*v.*

MAYOR, RECORDER, ALDERMEN AND COMMON COUNCILMEN OF MORRISTOWN.

1. No responsibility attaches for damage done by the diversion of surface-water, where the diversion is merely incidental to and occasioned by the making or alteration of street grades.

2. But where a municipality puts into execution a scheme of improvement by which surface-water, collected from a large area, is prevented from following the grades of the streets, and is carried, by artificial means, from where it would otherwise be discharged and made to flow on to the land of one person, in ease of the lands of others, there an actionable wrong is committed.

3. Where the quantity of surface-water sent to the point of discharge is increased by an enlargement of the area of drainage, but such enlargement results entirely from making the grade of the streets conform to the grade ·established by the proper authority, any injury resulting from the increase in the quantity of water discharged ·at that point is regarded, in law, as *damnum absque injuria.*

4. Where a municipality, by means of a basin and culvert, discharges all the surface-water carried to a particular point in such manner that the water, by its own force, makes a channel for itself through the land of a citizen, a taking of private property for public use occurs, and if no compensation to the ·owner be provided, the use of his property by the municipality will be enjoined.

On final hearing on bill, answer and proofs taken before a master.

*Mr. Edward Q. Keasbey*, for the complainants.

*Mr. George W. Forsyth*, for the defendants.

VAN FLEET, V. C.

The complainants' seek, by this suit, to have the defendants enjoined from unlawfully discharging surface-water on their land. They own a tract of land located on the easterly side of Macculloch avenue, which has a frontage on that street of two hundred and thirty feet, and extends back about four hundred and fifty feet. The land is improved. There is a large mansion and other buildings on it. The surface of the tract is uneven. There is a depression in the northern part of it, nearly ten feet below the surface on the southerly side and about eight feet below the surface on its northerly side. The width of the bottom of the depression, measured from the foot of the slope at the south to the foot of the slope at the north, is between sixty and seventy feet, and the depression extends the whole depth of the tract, from the street to its rear line. Prior to the improvement of Macculloch avenue and the adjacent streets by grading and guttering, the proofs show that the course which the surface-water, flowing along the easterly side of Macculloch avenue, from both north and south, naturally took, when it reached the depression, was to pass from the street on to the complainants' land, and it there, in consequence of the bottom of the depression being nearly level, spread itself out over the surface without washing or breaking the land, or causing injury or annoyance of any kind. The bottom of the depression was unbroken by a waterway of any kind; part of it was in sod and another part was used as a garden. A wagon road, leading from the mansion to the barn in the rear, ran across it, and a corn-crib, with a chickenhouse beneath, stood in it where its surface was lowest. The water flowing along the westerly side of the avenue flowed off on land lying on that side. None of it discharged itself on land of the complainants, except in rare instances, when unusual floods occurred, and at such times, that which flowed over mingled itself with that flowing along the easterly side, and the whole

volume then passed off on the complainants' land and then spread itself out without breaking the surface or doing other damage. This was the condition of the complainants' land and the natural course of the surface-water prior to the doing of the acts which the complainants say have resulted in a violation of their constitutional rights, and against the consequences of which they ask protection.

The defendants, some years ago, improved Macculloch avenue and several of the adjacent streets by grading and guttering. Their power to make such improvements is not disputed. But the complainants say that, in this instance, the defendants so exercised their power as to inflict two continuous and irreparable injuries on their land. First, they say that the defendants so graded the streets they improved as that the surface-water, from a larger area, is carried away from where it would naturally go and made to flow to their land and there discharge itself. The special grievance here complained of is, that, by the scheme of drainage adopted by the defendants, the quantity of water which would naturally discharge itself on the complainants' land has been very largely increased. And, in the second place, they say, that the defendants have so arranged the discharge of the water carried to their land, by the street gutters, as to cause the water to make an open channel for itself through their land, and that, by this means, an easement, for the benefit of the public, has been fastened on their land, for which no compensation has been made. In other words, that the defendants have appropriated their land to the use of the public, without either making compensation or providing that compensation shall be made.

The law pertinent to the first ground of injury, alleged by the complainants, is well settled in this state. No responsibility attaches for damage done by the diversion of surface-water by the public authorities, where the diversion is merely incidental to and occasioned by the making or alteration of street grades. *Town of Union* ads. *Durkes, 9 Vr. 21.* Where, however, a municipality puts into execution a scheme of improvement by which surface-water, collected from a large area, is prevented from following the grades of the streets, and is carried, by artificial

Miller *v.* Morristown.

means, from where it would otherwise be discharged, and is made to flow upon the land of one person, in ease of the lands of others, there a wrong is committed of which it is the duty of the courts to take cognizance, and which a court of equity may redress by injunction. *Field* v. *West Orange, 9 Stew. Eq. 118; S. C. on appeal, 10 Stew. Eq. 600.* The question whether the complainants are entitled to relief or not, in respect to their first ground of action, must be determined by the principles just stated. No doubt can be entertained under the evidence that the quantity of water discharged on the complainants' land, since the streets were graded and guttered, is much greater than it was before. But this does not show that they have sustained an actionable injury. Such improvements necessarily result in increasing the quantity of water sent to the point of discharge and also the celerity with which it is carried there. They are made in part to effect these purposes. The road-bed is made hard and smooth and put in such a form that it will shed water quickly, instead of collecting in the depressions, there to remain until absorbed or evaporated; and then paved gutters are constructed on the sides, so that all the water falling on the road, or finding its way there, shall run off at once into the gutters and be by them quickly carried to the point of discharge. It is also true, as the proofs show, that the quantity of water carried to the complainants' land, and there discharged, has been somewhat increased by an enlargement of the area of drainage, but such enlargement is, it appears, the direct result of making the grade of the streets improved conform to the grade established by the proper authority. So that it thus very clearly appears that the whole of the increased quantity of water transmitted to the complainants' land, is such, and such only, as is necessarily diverted to their land in carrying out a lawful scheme of local improvement. For injury resulting from such a diversion of surface-water no action will lie. In *Town of Union* ads. *Durkes,* the chief-justice, in speaking of a cause of action substantially like the one now under consideration, said: "In all this, the corporate authorities did nothing but what they had a right to do, and the result was nothing wrongful, being simply the diversion of

surface-water. If, for such a course of acts, an action will lie, then scarcely a grade of a street can be made or altered without incurring a similar liability." It is clear that the relief asked by the complainants on their first ground must be denied.

But their second claim is well founded. That, in my judgment, rests on a solid foundation. There is no dispute about the facts. The defendants, in executing their scheme of improvement, constructed a basin in Macculloch avenue, opposite the depression in the complainants' land, for the reception of the water flowing along both sides, and from both directions, and they also built a culvert, about three feet in width and two feet in depth, extending from the basin to the complainants' land. This arrangement resulted, as it manifestly was intended it should, in pouring all the water collected from the area of drainage on the complainants' land at a single point. And the consequence is, that the water has, by its own force, made a channel for itself all the way through the complainants' land. This channel is irregular in width, depth and course. In some places it is five feet wide and in others only three, and it is from two to three feet in depth. One of the witnesses describes its course as zigzag. This method of discharging the water collected in the basin condemns the complainants' land to public use just as effectually as that purpose would have been accomplished if the defendants had made an actual entry on their land and opened a channel through it. Had the defendants attempted to acquire a right of drainage in that way, the illegality of their course would have been so conspicuous as to stand without excuse and absolutely indefensible, and yet, a very little consideration will show, as I think, that the course they did pursue, to attain the same end, is just as plainly contrary to law. If the defendants have a right to maintain the culvert in its present position, and, by means of it, discharge all the water collected from the area of drainage on the complainants' land, at a single point, then it follows, as a necessary legal consequence, that the defendants have, by their own act, and without compensation, fastened an easement on the complainants' land, which will endure while the culvert endures, and that the complainants will, to the extent of

the easement, be deprived, for all that period, of their property. The defendants never possessed any such right or power. The ·constitution ordains

"That private property shall not be taken for public use without just compensation; but land may be taken for public highways, as heretofore, until the legislature shall direct compensation to be made."

Since the adoption of this provision the legislature has directed that when land is taken for public roads it shall be paid for, and the result is, as the supreme court, speaking by the chief-justice, has said, "that every vestige of the ancient *jus publicum,* to seize the property of the citizen without rendering to him its value, has been entirely abolished in this state." *Ward* v. *Peck, 20 Vr. 42, 44.* The defendants cannot do by indirection what they have no right or power to do directly, and they must be held to have intended to do those things which are the natural and inevitable consequences of their acts. This being so, it must be adjudged that they have unlawfully appropriated the complainants' land to public use.

The complainants are entitled to a decree prohibiting the ·defendants from maintaining the culvert for the purpose of discharging the water passing through it on to the land of the complainants. The complainants are also entitled to costs.