THE EAST JERSEY WATER COMPANY, PLAINTIFF IN ERROR, v. GEORGE W. BIGELOW ET AL., DEFENDANTS IN ERROR.

1. One who erects a structure or construction which creates a nuisance and then conveys to another his title and the lands and premises on which the structure or construction exists and is maintained, with a covenant in the deed of conveyance for quiet enjoyment and right to maintain such structure or construction, is liable for the continuance of the nuisance upon the ground that he affirms it, and must be regarded in law as continuing it. He is the author of the original wrong, and thus transferring the premises with the original wrong still existing, he is treated as affirming its continuance.

2. When one turns more water on the land of another than would naturally go in that direction, it is immaterial whether it be productive of injury or benefit as regards a right of action, for no one has a right to compel another to have his property improved in a particular manner. It is as illegal to force him to receive a benefit as to submit to an injury.

3. It is an actionable nuisance for one, by means of a reservoir, to increase, divert or diminish the volume of water naturally flowing in a stream, to the detriment of and damage to a mill-owner thereon, and it is no defence to the action for such an injury that the person complaining is benefited by the increase in the volume of water, for he has the right to the enjoyment of the waters in their natural condition; nor if the plaintiff be injured by the diversion or diminution of the usual flow at certain periods, this injury cannot be compensated without the consent of the plaintiff, by an increased volume caused by the defendant, in excess of the natural flow at any other time, and no credit could be given or diminution of actual damage made because of a benefit received by the plaintiff by reason of such increased volume.

4. Profits are recoverable as damages when they might have been realized and when they are capable of being estimated with reasonable certainty, and in actions of tort where the *quantum* of damages is very much within the discretion of the jury, the evidence of the nature and extent of the plaintiff's business and the general rate of profit he has realized therefrom, which has been interrupted by the defendant's wrongful act, is properly received, not on the ground of its furnishing a measure of damages to be adopted by the jury, but to be taken into consideration to guide them in the exercise of that discretion which, to a certain extent, is always vested in the jury.

On error to the Supreme Court.

For the plaintiff in error, *Joseph Coult.*

For the defendants in error, *John W. Harding.*

The opinion of the court was delivered by

LIPPINCOTT, J.   The defendants in error are the owners of a tract of land through which a branch of the Pequannock river flows.   On this land they maintain a saw-mill, which is operated by water power drawn from the river by means of a low dam and a raceway leading to the saw-mill.   This mill has been uninterruptedly operated by the defendants in error and their father for a period of over thirty years, and their legal right to operate the mill in the manner in which it is operated during this period is not disputed by the plaintiff in error.

This action is for damages for a diversion of the water of the river in such volume, as it has been accustomed to flow, as to interfere with the operation of the mill.   This diversion commenced in September, 1891, and, it is alleged, continued from time to time, covering certain periods, until the commencement of this action on December 10th, 1895.

The liability of the plaintiff in error for injuries arising from the diversion of the water up to May 2d, 1892, is conceded, but beyond this date the responsibility is disputed.

The first assignment of error is taken against the admission of evidence to show diversion and injury after this date.

The facts, so far as they are involved in the discussion of the question presented, are as follows:

The East Jersey Water Company, the plaintiff in error, on September 24th, 1889, entered into a contract with the Newark Aqueduct Board and the mayor and common council of the city of Newark to furnish a water-supply to that city and to construct such dams, reservoirs, works and conduits on the Pequannock river and other rivers as might be necessary to render a water-supply to the city to the extent of fifty million gallons daily, to be completed by May 1st, 1892.   A subsequent and further contract was made on August 1st,

1892. These contracts provided that, after the contract was fully performed and completed, the city of Newark might, at its option, by a deed or deeds of conveyance, become the owner absolutely, in its own right, of the water, water rights, dams, reservoirs and works constructed under the contract, subject, however, to a license to the East Jersey Water Company to divert and use, for its own purposes, a certain portion of the water in excess of twenty-seven million five hundred thousand gallons daily up to the year 1900, and deferring the payment of $2,000,000 of the purchase price until that time, and that, for the purposes of this license and contract, the East Jersey Water Company should, at its own cost and expense, keep and maintain all such dams, reservoirs and works, and at the end of the period deliver the same, in good repair, to the city of Newark, and that the control of the East Jersey Water Company should then entirely cease and determine.

Under these contracts, the plaintiff in error, in the construction of these dams and reservoirs, interfered with, interrupted and diverted the usual flow of water of the river.

On the 2d day of May, 1892, the East Jersey Water Company conveyed water, water rights, reservoirs, dams and works to the city of Newark.

This deed of conveyance reserves to the water company the right or license until September 24th, 1900, to take out of the pipes or conduits, at the city of Newark, any excess of water over twenty-seven million five hundred thousand gallons daily for its own use, and for such purpose and in consideration therefor the water company reserved the right and agreed to keep, maintain and control the dams, conduits and works.

The contracts and this deed of conveyance were offered in evidence by the plaintiffs below.

The plaintiffs below then proceeded to produce evidence to show diversion of water to their injury after the date of the delivery of this deed. This was objected to on the grounds that the city of Newark, by this conveyance, became the owner of the property and works, and that from that time on

the maintenance and operation of the works were acts of the owner, and that if any liability existed for any further diversion it was upon the city of Newark.

The learned trial justice admitted the evidence on the ground that, by the deed, the water company reserved the right, and were licensed and permitted to maintain the dams and reservoirs which created the nuisance, and were put in control thereof for the purpose of utilizing the excess of water for its own benefit, and liable to the plaintiffs below for any injury that such maintenance and control caused.

In the admission of this evidence it is difficult to perceive any error in the learned trial justice. It may be said as a fact, under this deed of conveyance, that the further control and management of the works in the water company was exclusive, but, even if it were not, still the control being to an extent retained would render the water company liable at least for such maintenance and control as it actually exercised.

It cannot be contended, either in reason or authority, that the company was relieved of liability from and after the date of and delivery of the deed, for the deed itself, by its own provisions reserving this control, rendered the defendants liable. Besides, in the deed, the grantor covenants the right in the grantee to maintain the erection of the water works, and the general principle is clear that one who erects a structure or construction which creates a nuisance, and then conveys to another his title, with covenants with the grantee for quiet enjoyment and the right to maintain the erection, is liable for its continuance upon the ground that by his relations with the occupier he affirms the nuisance, and must be regarded in law as continuing it. He is liable for a continuance of the nuisance if, from the terms of the conveyance, he can fairly be said to affirm or uphold it. The ground upon which the alienor is held liable for a nuisance created by him is that he is the author of the original wrong, and transferring the premises with the original wrong still existing is treated as affirming the continuance of it. *Wood Nuis.* (2d

*ed.), p.* 78, § 73; *Gould Wat.* (*2d ed.*), §§ 387, 391, and cases cited.

Besides, the right to keep, maintain and control these dams, reservoirs and other works was expressly reserved to the water company, and up to the time that this evidence was offered there was nothing in the case which, in the slightest, tended to show that the actual maintenance and control had changed.

The person primarily liable for a nuisance is he who actually creates it, whether on his own land or not, and the contracts were admissible to show the liability for construction for the city, and the conveyance clearly was evidence to show continuing control and the evidence clearly admissible. Where the continuance of the nuisance is expressly provided for, no question can arise as to continuing liability. *Blunt* v. *Aikin*, 15 *Wend.* 521; *Waggoner* v. *Jermaine*, 3 *Denio* 302; *Hanse* v. *Cowing*, 1 *Lans.* 288.

Another exception was to the charge of the court upon the same subject of the liability of the water company for injuries inflicted upon the plaintiffs below after May 2d, 1892. The evidence on the part of the defendant tended to establish quite clearly that the plaintiff in error, through its agents and servants, was in actual control of the dams and reservoirs during the whole period for which the claim for damages is made. Both the answers to the formal interrogatories read as evidence, and the evidence of the witnesses on the trial, tend to establish this fact.

The trial court, after referring to these facts, said: "I, therefore, charge you if, after the deed to the city of Newark, this defendant remained in control of the Oak Ridge reservoir and used it to confine the waters of this branch of the Pequannock, and in using it restrained these waters from flowing in their usual and accustomed mode to the plaintiffs' mill and thereby deprived the plaintiffs' mill of power, is liable therefor to the plaintiffs."

The fact of control by the deed of conveyance and the admissions in the answers to interrogatories, and the evidence

of witnesses undisputed on this point of control was so clear and so undisputed that it could have been made a subject of direction in favor of the plaintiffs below, and the defendant cannot complain that the facts were submitted to the jury to determine whether a basis of liability existed and continued. Upon the principles stated regulating the admission of evidence of injury after May 2d, 1892, the court committed no error against the defendant below in this submission to the jury.

There were several requests, upon the question of damage, which the trial court refused to charge in the language of the requests, and to which refusals exceptions were taken.

The first in order, as contained in the assignment of error, is "that the measure of damages for the injury complained of is the diminution in the rental value of the premises occasioned by that injury."

The trial court correctly refused this as an exclusive rule of damages. The damages might not depend upon the amount which could be obtained as rent, but as well upon the diminution in value of the premises arising from the wrongful diversion of the water. The diminution of the value of the use of the premises to the owners might not at all be connected with the mere diminution of the rentals. *Luse* v. *Jones*, 10 *Vroom* 707; *Halsey* v. *Lehigh Valley Railroad Co.*, 16 *Id.* 26, 37; *French* v. *Connecticut River Lumber Co.*, 145 *Mass.* 261; *Post* v. *Mum*, 1 *South.* 61.

Another exception in order was taken upon the refusal of the court to charge the jury, "That the jury could not confine their inquiry and base their verdict alone on damages claimed to have been suffered at particular periods when the water was shut off, but must consider whether he suffered damages generally, and, if so, what damage during the entire period covered by the suit."

The plaintiffs below were entitled to the usual and accustomed flow of the water. *Merritt* v. *Packer*, *Coxe* 496, 533; *Wood Nuis.* (2d ed.), pp. 499, 500, § 426.

The trial justice, in answer to this request, declined to

charge as requested in the language of the request, and charged that " the plaintiff, if injured by the shutting off of the water during the period proved by them, would not be compensated, without their consent, by water sent down in excess of the natural quantity at another time. They might consent to receive the water and utilize it, and so set that off against the injury done at a previous time, but in the absence of such a consent, you, gentlemen, would not be entitled to give the defendant credit for that additional water at another time."

This rule accords with reason and that certainty which is required as to compensation for injury done, and it appears to be fully authorized by precedent.

Chief Justice Kinsey, in *Merritt* v. *Packer, supra,* said: " It would be equally unreasonable that one man should have the right to turn more water over the land of his neighbor than would naturally go in that direction, and so far as regards the right, it is altogether immaterial whether it be productive of injury or benefit. No one has a right to compel another to have his property improved in a particular manner. It is as illegal to force him to receive a benefit as to submit to an injury."

In an action for overflowing the plaintiff's land, on which it was suggested that the acts complained of as injurious, instead of being an injury, were really a benefit to the plaintiff's land, but the court said no infringements of the rights of another could be justified on the ground that the act is a benefit to the owner, if it is done against his will. *Tillotson* v. *Smith,* 32 *N. H.* 90, 96; *Gerrish* v. *New Market Manufacturing Co.,* 30 *Id.* 478.

It is the right of every owner of land upon a stream to have the water come to him in its natural flow, undiminished in quantity and unimpaired in quality, and, it may be added, with no increase of the volume except from natural causes. Therefore, it is an actionable nuisance, at common law, for a mill-owner or other person to turn a new stream into the stream, or, by means of a reservoir, to increase the volume of water naturally flowing in the stream. It is no defence

to an action for such an injury that the person complaining is benefited by the increase in the volume of water, for no person can be compelled to have his premises improved, and has a right to their enjoyment in their natural condition and according to his tastes and inclination. *Wood Nuis., pp.* 499, 500, § 426.

I have noticed, upon an examination, that there was no evidence in the case upon which this request to charge could be founded. It was the opinion of some of the witnesses that, since the reservoir had been constructed, more water, at times, had flowed than before, but no times were fixed, and there was no evidence, so far as I can perceive, that such increased flow, if it ever did exist, was of any use or benefit to the plaintiffs in this action.

For these reasons, this request to charge was properly refused.

The only other two errors assigned pertain to the subject of damages. One arises upon a request to charge upon the subject of the loss of profits as an element of damage and the other upon what the court said in the charge to the jury on that subject as a measure or element of damage. Both can be considered together.

The request to charge was: " That no damages could be awarded by them for loss on supposed profit on work not done, unless it appear that the plaintiffs were prevented by the acts of the defendant from doing the work, and did not in fact do it." The specific reply of the learned trial justice was as follows: " I do not know that I quite understand that, but I will decline to charge on that subject otherwise than I have charged. The case is left somewhat obscure with reference to whether the work the plaintiffs say they were prevented from doing was afterwards done by them, and whether, if so done, it prevented them from doing other work that would have been offered to them, which they could otherwise have done. I shall leave the case to the jury on the charge as I have given it, and decline to charge otherwise than I have." In this connection, counsel of the defendant

called the attention of the court that the jury had been charged that they should consider the loss on fifty stone-boats, and that afterwards all those stone-boats had been completed except an order for twenty, which was either withdrawn or turned aside. The trial court, after referring to this misapprehension, said : " It is not a question of profit, but a question of what amount has been lost to the plaintiffs by their inability to finish that order, and after that—counsel calls it to my mind—if it be true that they filled that order so far as thirty were concerned and only lost the order with respect to twenty, I restrict your consideration to those—the twenty."

The other exception is founded upon what the court said in relation to loss of profits as an element of damage, and upon the assumption that the charge was that the measure of damages to which the plaintiff was entitled was the loss of business profits during the period complained of.

The whole charge, including what was said in reply to the requests to charge, must be looked to in order to determine whether these two errors are well founded.

The trial court nowhere, in its charge, placed any such proposition to the jury that the measure of damages was the loss of business profits during the period complained of.

In this state it has been held that profits are recoverable as damages where they might have been realized and where they are capable of being estimated with a reasonable degree of certainty. *Wolcott* v. *Mount,* 7 *Vroom* 269 ; *New Jersey Express Co.* v. *Nichols,* 4 *Id.* 435. In this latter case the court said : " In actions of tort, where the *quantum* of damages is very much within the discretion of the jury, the evidence of the nature and extent of the plaintiff's business and the general rate of profit he has realized therefrom, which has been interrupted by the defendant's wrongful act, is properly received, not on the ground of its furnishing a measure of damages to be adopted by the jury, but to be taken into consideration by the jury, to guide them in the exercise of that discretion which, to a certain extent, is always vested in the jury."

In an action for injuries arising from the unlawful raising of a dam below the plaintiff's cotton mill on the same stream, the operation of which was greatly impeded by back water, whereby the plaintiff's profits were greatly diminished, evidence of the profits of manufacture were held admissible, as a basis upon which to estimate the damages, if not as an actual measure thereof. In all cases of this character the true measure of damages is the actual compensation which, in view of all the circumstances, the plaintiff ought to have for the injury. *Wood Nuis.* (2d ed.), p. 1011, §§ 875, 876; *Sedgw. Dam.* (3d ed.), pp. 92, 93, §§ 79, 82; *White* v. *Moseley*, 8 *Pick.* 356. These rules are of daily application in the courts of this state, and the charge of the learned trial justice in no instance violates any of them.

Upon this subject of damages the court, in its charge, said:

" Therefore, if there is in this case proof of an illegal invasion of right, there must be a verdict for the plaintiffs for nominal damages and no more, unless the plaintiffs have established, by proof, actual damages.

" Damages in a case like this must be compensation. Compensation for the injury done is the measure and the limit of the damages that you should give. These plaintiffs must be compensated in money for what they have lost in money value. In the case before you, it will not be sufficient to sustain a verdict for more than nominal damages to prove that the defendant has at times withheld from the plaintiffs' mill the natural flow of the water; if that proof stood alone nothing but nominal damages could be given. To obtain actual damages, the plaintiffs must have proved an actual injury, and on such proof a verdict that will compensate the plaintiffs for the actual loss may be rendered. No greater amount, of course, I need not tell you, than what will compensate them, should be given.

" To recover actual damages the plaintiffs must prove, as I have said, not only that the water was irregularly withheld from them, and that the power that they had there could not be used, but at those periods their power was of value because

their business required them to use it, and that it could be used in their business. In this situation of the case you should first ascertain at what periods, if any, water was improperly withheld, and secondly, were the plaintiffs then in a business in which the water power was to be used and could be used."

And, again, speaking as to the performance after May, 1892: "If you can fix, from the evidence, the periods, and that in those periods the business of the plaintiffs was interfered with and the actual loss inflicted upon them on the same principles as I have stated before, then, for those periods, you may make them allowances that will compensate and put in their pockets in money what they have lost in money value."

And, again, speaking of the interruption of the plaintiffs in the construction of the stone-boats, the court said : "You may take in consideration the order for the fifty stone-boats which they were unable to fill." A correction was made to twenty stone-boats, to which reference has already been made, and the question whether the performance of any order for stone-boats was interrupted is left to the jury, and the court continues, "now what will compensate them," and then he goes on to discuss the price obtained in the work of the saw-mill, the expenses thereof and the obligation of the plaintiffs below to judiciously employ their workmen at any work which they might have had to do there during these periods of interruption.

It will thus be seen that the verdict of the jury, under the instructions of the trial court, was left to depend upon the proof of actual loss suffered from the acts of the defendant, and that the proof of such loss must be furnished as the basis of the verdict, and that the loss of profits, whilst it was left to the jury as one of the elements of damage for their consideration, was not at all made the measure of damages.

No error in the admission or rejection of evidence, or in the submission of the case to the jury, has been discovered, and the judgment of the Supreme Court must be affirmed, with costs.

Tallon v. Hoboken.                    *60 N. J. L.*

*For affirmance*—COLLINS, DEPUE, GARRISON, GUMMERE, LIPPINCOTT, LUDLOW, VAN SYCKEL, BOGERT, DAYTON, HENDRICKSON, NIXON.    11.

*For reversal*—None.