Simmons *v.* Paterson.

SAMUEL H. GREY, attorney-general, ex rel. HENRY P. SIMMONS et al., complainants and respondents,

*v.*

THE MAYOR AND ALDERMEN OF THE CITY OF PATERSON, defendants and appellants.

[Filed March 19th, 1900.]

1. The city of Paterson had legislative authority to construct its system of sewers, discharging their contents into the Passaic river, and is not, therefore, subject to the charge of maintaining a public nuisance.

2. The title of riparian owners along Passaic river, where the tide ebbs and flows, extends only to high-water mark, the state is the absolute owner of the bed of the stream. Such riparian owners having no title to the bed of the stream are not entitled to an injunction against the city on account of the pollution of the stream.

3. The title of riparian owners above the ebb and flow of tide extends to the middle of the stream, subject only to a servitude to the public for purposes of navigation. The pollution of the river by sewage constituted the taking of the property of such owners, which the legislature cannot authorize except upon just compensation.

4. Jersey City has no rights in the waters of the Passaic river distinct from the rights of the general public, either by reason of the location of its water works or in virtue of the act of 1852. *P. L. of 1852 p. 419.*

5. By reason of the great injury which would fall upon the city by restraining the continuous use of its sewerage system, and the acquiescence of these riparian owners above where the tide flows, their injury being comparatively small, it would be inequitable to grant them an injunction.

6. They may obtain redress by amending their bill, or by filing a new bill praying for an injunction, unless the city of Paterson will consent to make such compensation to them as shall be ascertained to be just; or they may, if they elect, sue at law for their damages.

On appeal from a decree of the chancellor, whose opinion is reported in *Attorney-General v. Paterson, 13 Dick. Ch. Rep. 1.*

*Mr. Thomas C. Simonton, Jr.,* and *Mr. Eugene Stevenson,* for the appellants.

Simmons *v.* Paterson.

Mr. *Samuel H. Grey,* attorney-general, *McEwan & McEwan,*
Mr. *James B. Vredenburgh* and Mr. *John P. Stockton,* for the
respondents.

The opinion of the court was delivered by

VAN SYCKEL, J.

The information and bill of complaint in this case was filed
by the attorney-general, on behalf of the state at the relation of
owners and possessors of lands along the banks of the Passaic
river, to restrain the city of Paterson from depositing or dis-
charging its sewage through its drains or sewers into the Passaic
river and from constructing new sewers to discharge into said
river and from enlarging or increasing its present sewage system
with outlets into said river.

Thereupon an order to show cause was granted why an injunc-
tion should not issue as prayed for in said information and bill.

Upon the hearing of this order affidavits were presented by
the defendants.

To the information and bill the city interposed a demurrer.

Upon the 28th day of March, 1899, the chancellor overruled
the demurrer and ordered an injunction, in which order it is
recited "that upon reading the information and bill of com-
plaint and the affidavits annexed thereto, and upon reading the
demurrer of the defendants to the said information and bill and
the affidavits presented by the defendants upon said order to
show cause, the chancellor being of opinion that the defendants'
acts in discharging sewage into the Passaic river in the manner
set forth in said information and affidavits constituted a public
nuisance: it is ordered that an injunction do issue enjoining
and restraining the mayor and aldermen of the city of Paterson,
until the further order of said court, from discharging sewage
or permitting sewage to be discharged, directly or indirectly, into
the Passaic river, above tide water through any public sewer or
sewers of said defendants, constructed or to be constructed, which
do not now discharge directly or indirectly into said river."

From the order overruling the demurrer and also from the
order for injunction an appeal was taken to this court.

Simmons *v.* Paterson.

The affidavits therefore which were considered by the chancellor in making the order for injunction are part of the case as presented by the appeal to this court.

In 1867 the legislature passed a supplement to the charter of the city of Paterson, by the seventeenth section of which it is provided:

"That the mayor and aldermen of the city of Paterson are hereby authorized to cause such surveys, maps and returns to be made, as may be necessary to enable them to prescribe and adopt, either for the whole or any part of said city, the location of streets and sewers, or either, and the width thereof, hereafter to be opened or constructed therein, and when such location, width and grade shall be adopted, the surveys, maps and returns, prescribing and defining the same shall be recorded in the clerk's office of the county of Passaic, and thereupon no street or sewer shall thereafter within the district comprised in any such survey, map or return be opened or constructed, except in conformity therewith as to location, width and grade, and fully to accomplish the purposes contemplated by this section, the said mayor and aldermen may employ such engineers, surveyors and other persons, and provide for their compensation and pass such ordinances as they may deem to be proper, and may enter upon any land for making surveys and examinations." *P. L. of 1867 p. 653 § 17.*

It appears by the affidavits that in January, 1868, Gen. Viele presented a map and report of the city for a general system of sewerage. The map and report were referred to a joint committee of streets and finance to ascertain what legislation would be necessary to enable the city to proceed with the work.

Thereupon, under the direction of the public authorities, an act was drafted to enable the city to construct its sewers.

On the 26th of February, 1868, an act of the legislature was passed entitled "An act to authorize the construction of sewers and drains in the city of Paterson."

The second section of this act provides:

"That all such sewers and drains shall be constructed in conformity with the plans thereof adopted, or which shall be adopted by said mayor and aldermen, pursuant to the 17th section of the act approved April 4th, 1867, entitled 'A further supplement to the act entitled "An act amending and revising the act to incorporate the city of Paterson."'"

By the said act the city was authorized to enter upon any lands for the purpose of making surveys and examinations, and to use

the ground and soil under any street, highway, railroad, lane, alley or court within the city for the purpose of constructing the works contemplated by the said act.

By the last section of the said act it was declared that it should take effect immediately and be deemed to be a public act.   *P. L. of 1868 p. 126.*

Under the sanction of this legislation a number of sewers, which are now part of the sewer system of the city, were constructed.

By an act passed in 1871 *(P. L. of 1871 p. 803)*, the city charter was revised and therein the power to construct sewers was continued.   By the said affidavits it appears that all the sewers constructed under this legislation discharged into the Passaic river, and that at least up to the year 1872 the only system of constructing sewers which had been adopted in this country was by building them underground, with the outlet into the natural water course on the banks of which the city was built.

From this recital I think it sufficiently appears that the city of Paterson had legislative authority to construct the system of sewers the use of which the complainants seek by their information and bill to restrain.   Full power was conferred by this legislation upon the city of Paterson to adopt and execute its own plan of sewerage so far as the rights of the state were concerned.

If the power inhered in the legislature to bestow such authority upon the city, it is the settled law of this state that the municipal corporation is not responsible for those incidental damages that result from the proper exercise of their functions, and such exercise will not subject it to the charge of maintaining a public nuisance.   *Beseman* v. *Pennsylvania Railroad Co., 21 Vr. 235;* same case affirmed, *23 Vr. 221.*

So far as the authority of the state can avail for that purpose the legislative consent furnishes ample protection to the city for the appropriate exercise of granted power.

Since the decision of *Stevens* v. *Paterson and Newark Railroad Co.,* in this court, reported in *5 Vr. 532,* it has been the conceded law that the title of the riparian owner on the

Simmons *v.* Paterson.

navigable waters of the state, where the tide ebbs and flows, extends only to high-water mark and that the state is the absolute owner of the bed of the waters beyond high-water mark.

This adjudication leaves the riparian owners of lands on the Passaic river where the tide ebbs and flows without the right to relief.

This question is discussed and settled in the opinion of this court in the case of *Sayre* v. *City of Newark,* decided at the present term, and it is therefore unnecessary to refer to other authorities.

But in that case the alleged injury affected only owners on tide water; the rights of those above the flow of the tide are in nowise involved in the decision of the *Sayre Case.*

In *Cobb* v. *Davenport,* in our supreme court, *3 Vr. 368,* Mr. Justice Depue says: "That by the common law all waters are divided into public waters and private waters. In the former, the proprietorship is in the sovereign; in the latter, in the individual proprietor.

"The title of the individual being personal to him, is exclusive, subject only to a servitude to the public for purposes of navigation, if the waters are navigable in fact. The test by which to determine whether waters are public or private is the ebb and flow of the tide. Waters in which the tide ebbs and flows, so far only as the sea flows and reflows, are public waters; and those in which there is no ebb and flow of the tide are private waters."

In the case of *Attorney-General* v. *Delaware and Bound Brook Railroad Co., 12 C. E. Gr. 631,* the case of *Cobb* v. *Davenport* is cited with approbation. In pronouncing the opinion of this court, Mr. Justice Dixon said that the bed of the Delaware river above tide water is private property, subject to the paramount public right to use the river as a common highway, in which is included the right to preserve and improve the navigability of the water. No other qualification or restriction of the private ownership was intimated.

The English cases sustaining the right to sewer into freshwater streams, under license from parliament, are not authority here. Our legislature has not like unlimited power to legalize a grant which is hostile to the interest of the riparian owner,

without providing compensation as enjoined by our state constitution. There is no such limitation upon the power of the British parliament.

The learned justice who delivered the opinion in the case of *Attorney-General* v. *Delaware and Bound Brook Railroad Co., supra,* is too accurate in his statement of legal principles to have omitted to mention the right of a city above tide water to make the river an outlet for its sewers, if such a right in his judgment existed. It would be a barren title if the owner could not invoke the aid of the law to preserve it from destruction.

It must therefore be concluded that the riparian owners on the Passaic river, above the point where the tide ebbs and flows, have title to the bed of the stream to the middle thereof, subject only to the right of the state to regulate navigation, so far as the water may be navigable.

The relators, in the information of the attorney-general, who are riparian owners above the flow of the tide, have a right of property in the river, and in that respect the legal rule applicable to them differs essentially from that which pertains to those below them, where the tide ebbs and flows.

In *Merrifield* v. *Worcester, 110 Mass. 216,* and in the more recent case of *Valparaiso* v. *Hagen, 153 Ind. 337,* in opinions of much force, it is held, that where sewers emptying into freshwater streams are constructed under legislative authority, the riparian proprietor cannot recover for the pollution of the stream, so far as it is attributable to the authorized plan of sewerage adopted by the city, but only in case the injury results from improper construction or unreasonable use of sewers, or negligence of the city in the care of them.

Assent cannot be given to the correctness of these decisions, as they are not in harmony with the adjudications of our own legal tribunals.

In *Beach* v. *Sterling Iron and Zinc Co., 9 Dick. Ch. Rep. 65,* Vice-Chancellor Pitney, in his able review of the authorities, criticised the case of *Merrifield* v. *Wooster,* and said that so far as the expressions there used favor the notion that a city or town may collect and discharge sewage matter into a fresh-water stream to the injury of a riparian owner, and without liability

to action, they are contrary to the law as held in England for centuries.

The decree in that case recognizing the right of the riparian owner was unanimously affirmed in this court upon the opinion of the vice-chancellor in *10 Dick. Ch. Rep. 824.*

Riparian owners above tide own *ad medium filum aque,* and have a property right in the water flowing along and over their land.

This property right cannot be impaired except by the lawful use of the waters by riparian owners higher up the stream.

Lower owners must submit to such pollution as results from the natural or reasonable use of the owners above, produced by the surface drainage or by the percolation of offensive matter through the soil.

But the higher owners cannot lawfully combine and by construction of artificial conduits collect foul matter and pour it in mass into the stream. Such a scheme, when put into operation constitutes the taking of private property which the legislature cannot authorize except upon just compensation to the party injured.

The rights of such riparian owners are clearly stated in the opinion of Mr. Justice Lippincott, in this court, in the case of *East Jersey Water Co.* v. *Bigelow, 31 Vr. 201.*

By reason of the location of the Jersey City water works upon the tidal stream, the mayor and common council of Jersey City, complainants in this suit, have no rights in the waters of the stream distinct from the rights of the general public therein, nor are they endowed with superior rights by the legislature of 1852. *P. L. of 1852 p. 419.*

That legislation did not guarantee or assure to Jersey City the purity of the water, nor did it vest in Jersey City any part of the state's title in the tidal waters, upon which its present claim can be established and enforced.

It was simply the consent of the state that Jersey City might withdraw such quantity of water from the Passaic as might be required to furnish a supply of pure and wholesome water. This provision was intended to qualify and limit the extent of the grant so that the implication could not arise, that Jersey City

might without further legislation divert the water for other purposes than a water-supply for domestic and other like purposes.

At the time of the legislative grants to the city of Paterson in 1867-1868 and 1871, it would have been competent for the legislature to pass a law prohibiting the further use of the Passaic water in Jersey City, and compelling the city to procure its water elsewhere.

Therefore the grant to Paterson must be regarded as a repeal by implication of the previous grant to Jersey City, if it was an impairment of that grant, which cannot be conceded. *Newark Aqueduct Board* v. *Passaic, 18 Stew. Eq. 393.*

Jersey City is without a standing to invoke the injunction power in this case.

Ordinarily where the riparian owner is injured by an unlawful diminution of the quantity of water, or by its excessive pollution, when his legal right is established, he is entitled to the exercise of the injunction power of a court of equity.

Whether in this case the restraining order of the court should be interposed for the protection of the riparian owners above tide water, is the remaining question to be considered.

That question must be solved by determining whether in the situation of the parties here there is the presence of such circumstances and such equities as may justify this court in withholding its restraining arm.

On the one hand, the riparian owner is entitled to redress in respect of the deprivation of his property.

On the other hand, the city of Paterson, at an enormous expense, has put into operation under legislative authority, and for a long series of years has used and enjoyed, a system of sewerage which accommodates a population of over one hundred thousand people.

By the restraint prayed for, this sewerage system will be suddenly destroyed, and the homes of this multitude of people will be rendered perilous to health and life, and unfit for occupancy.

While the city cannot, upon this continued acquiescence of these riparian owners, predicate the right to deprive them of their property in the stream, yet in view of such acquiescence, and the magnitude of the injury which would fall upon the

public by prohibiting the use of the sewers, it would be inequitable to enjoin, if relief can otherwise be afforded. The relators are here asking equity and they must do equity.

A substituted remedy by giving them adequate compensation for their injury would be a just disposition of the controversy.

The granting or refusing of an injunction is a matter resting in the sound discretion of the court. Where it would cause great injury to the defendants and might be of serious detriment to the public, without corresponding advantage to the complainant, it will not be granted.

The authorities are collected in *Stew. Dig. 620* §§ *7, 10.*

In *Morris and Essex Railroad Co.* v. *Prudden, 5 C. E. Gr. 531,* Mr. Justice Depue, in delivering the opinion of this court, said "that an injunction ought not to be granted when the benefit secured by it to one party is of little importance, while it will operate oppressively, and to the great annoyance and injury of the other party, unless the wrong complained of is so wanton and unprovoked in its character as properly to deprive the wrongdoer of the benefit of any consideration as to its injurious consequences;" and he recognized the fact of acquiescence as a consideration of importance in determining whether the defendants should be restrained.

In the case before us the injury to the defendants would be so great that an injunction should not be granted to these complainants whose injury is incidental and comparatively small.

If these complainants amend their bill, or file a new bill asking for an injunction, unless the city will consent to make such compensation for the diminution in the value of their lands as shall be ascertained to be just, such equitable relief can be given to them.

A court of equity will, to effectuate justice, settle unliquidated damages. *Coster* v. *Monroe Manufacturing Co., 1 Gr. Ch. 467; Ingersoll* v. *Town of Newton, 15 Dick. Ch. Rep. 399.*

Those riparian owners above the flow of the tide have the right, if they so elect, to pursue their remedy at law, by instituting suits for damages.

In that event the city would be driven to file its bill to restrain the suits, offering to make just compensation.

That procedure was taken in *Paterson and Newark Railroad Co.* v. *Kamlah, 15 Stew. Eq. 93,* and approved in this court, the decree being unanimously affirmed. *Paterson and Newark Railroad Co.* v. *Kamlah, 2 Dick. Ch. Rep. 331.*

The injunction should be vacated and the record remitted to the court of chancery, and the case proceeded with in accordance with the views herein expressed.

*For reversal*—THE CHIEF-JUSTICE, DEPUE, VAN SYCKEL, DIXON, GARRISON, GUMMERE, LUDLOW, COLLINS, BOGERT, HENDRICKSON, ADAMS, VREDENBURGH—12.

