Tony's brook, a natural water course, has its source, and several branch sources, in the northwesterly section of Montclair, and runs, generally, southeasterly through the town and thence through Glen Ridge and Bloomfield, where it enters Second river, which empties into the Passaic. The natural drainage of all surface water of the town is southerly towards the brook, and all street grading, with the single exception involved in this litigation, conforms to the natural slope. Twenty-three drains of the town's underground surface water drainage system empty into the brook. As a part of the system the town constructed the "New Pine St." drain in 1924. This discharges into the "Old Pine St." drain, which empties into the brook. The old drain runs north on Pine street and serves an area of about eighty acres in the easterly section of the town on the Glen Ridge boundary line. The *Page 129 
new drain, an extension of the old one, runs northerly on Pine street to Walnut, westerly to Grove, northerly to Chestnut and westerly to Christopher, and is designed to accommodate an area of approximately seventy acres lying partly on the Glen Ridge boundary and northerly of the section served by the old drain. The complainant owns and operates a factory in the low lands through which Tony's brook flows, more than a mile down stream from Montclair. It has been there since 1891. In freshet seasons and during unusual downpours the brook overflows its banks and floods the factory, interrupting operation and causing damage. The flooding is incidental to the location. It is not objected that the artificial drainage into the brook by Montclair is burdensome, although it does, in some degree, contribute to the freshets. The flooding would happen were the drainage natural. The complaint is that surface water in the area tapped by the new drain has been, at least since 1903, diverted eastwardly from its natural southerly course by the laying out and grading of Oxford street from Grove street eastwardly to the Glen Ridge line, and that this artificial flow into the streets of Glen Ridge cannot now be lawfully reverted to its natural course, gathered in the new drain and deposited in the brook, to the injury of the complainant. The complainant relies on Jerolaman v.Belleville, 90 N.J. Law 206. In that case the plaintiff's plant was located on a natural water course. The town had regraded the hilltop part of Jerolaman street, and its streets below suffered from storm water. To relieve the situation the flow down the hill was turned into the natural water course, by banking, and a covered drain, so that during a storm the plaintiff's premises were flooded by the diversion, and from back waters due to choking up the drain, and he sued the town for the damage. The court of errors and appeals held, in effect, the law to be, that a lower owner must submit, at his peril, to the flow of storm water diverted from its natural channels by lawful grading, but, that turning the newly-created flow into his premises by artificial means, to his damage, is actionable, just as would be the casting of a natural flow by artificial means; and that *Page 130 
upon that issue it is immaterial that in years past the storm water reached his premises by the natural route, for, in the newly-created circumstances, he need not apprehend nor guard against the approach of the common enemy except from the point to which it had been lawfully invited. The opinion does not go to the length that a natural flow, once diverted, is unalterable, permanent. Oxford street was laid out and graded by the owners in the development of their land, for habitation, some time before 1903. In adopting the new grade, which depressed eastward, thereafter carrying storm water into Glen Ridge, and, it is said, eventually to Third river, some two miles away, they cut through a ridge at the town line, which theretofore confined the water within the town and threw it southward to the brook. The town took over the street in 1903, paved it three years later, and has ever since maintained it. The town did not thereby abandon or lose its easement in this respect to the brook. The private action of the land owners in diverting the natural flow, and the later acquiescence therein by the town authorities, do not prevent the town from reverting it, and to the brook. The complainant acquired no prescriptive right to be relieved of the servitude. Hoboken Land Co. v. Hoboken, 36 N.J. Law 540.
There is no equitable estoppel, for the complainant has suffered no change in conduct or attitude relying on the diversion. And there is no legal obstacle to the town regrading Oxford street, restoring the natural flow, and catching it up in the drain. It has the power to regrade. The natural flow being restored by regrading, the complainant could not complain against its discharge into the brook; injury from drainage incidental to regrading would not be actionable. Miller v. Morristown,47 N.J. Eq. 62; affirmed, 48 N.J. Eq. 645. And the town is not to be put to the expense of first exercising the power in order to enjoy the privilege. That may be regarded as done, to work out the equities, although a familiar maxim is not strictly applicable.
The point raised by the defendant, that the court should weigh the inconvenience — the momentous importance of the drainage system to the inhabitants of the affected area, now *Page 131 
thickly populated, as against the comparatively insignificant damage to the complainant — is not maintainable. It appears that the contribution by the New Pine street drain will add approximately four per cent. to the volume of water deposited in the brook from Montclair, and a much less percentage to the entire volume reaching the complainant's factory. Glen Ridge and the county of Essex also drain to the brook. The rule is that if the injury is actionable, the inconveniences cannot be considered on final hearing. Hennessy v. Carmony, 50 N.J. Eq. 616. And it is there held that the injury must be sensible and appreciable to be actionable. Fractional contribution, if unlawful, is actionable. Phillips v. Phillips, 34 N.J. Law 208; Soule v.Passaic, 47 N.J. Eq. 28.
The defendant's contention that the maxim de minimis is applicable, is not entertainable. Wartman v. Swindell,54 N.J. Law 589. The invasion of the complainant's property may grow into a legal right. Paterson v. E.J. Water Co., 74 N.J. Eq. 49.
The complainant is not estopped. The drain was constructed under its protest. If it imposes an unlawful burden no protest was necessary. The defendant proceeded at its risk. Paterson v.E.J. Water Co., supra.
The proper remedy of the complainant, under the circumstances, were the defendant responsible, is compensation, as in Simmons
v. Paterson, 60 N.J. Eq. 385.
The complainant maintains a dam in the brook, midway its factory, and the defendant, by counter-claim, prays that it be ordered removed. The dam, unless the gates are opened, of course, interferes with the full flow of the brook in stormy weather, but the complainant alone suffers. The defendant has shown no damage to itself.
The bill and counter-claim will be dismissed. *Page 132