## PULLIAM *vs.* OWEN & RUSSELL.

1. Although bills for the specific performance of contracts are addressed to the discretion of the court, yet this is not an arbitrary or capricious discretion, but one which is regulated, as nearly as may be, by general rules.
2. The vendor cannot, after he has received full payment of the purchase money, resist a specific performance of his contract, on the application of the vendee's assignee, on the ground that the vendee has committed trespasses on his other lands, and is insolvent.
3. Unliquidated damages, sounding in tort, are not the subject of a set-off, either at law or in equity.

APPEAL from the Chancery Court of Macon.
Heard before the Hon. JAMES B. CLARK.

BILL FOR SPECIFIC PERFORMANCE. The complainant, Jas. Pulliam, alleges that, in September, 1845, Robert Owen, one of the defendants, sold to William Russell, who is also made a defendant to the bill, a tract of land containing twenty-eight acres, (being a part of section seven, in township nineteen,

and range twenty-five,) for the sum of $224; that the full amount of the purchase money was paid at the time of the sale, and said Owen, not having at that time obtained the legal title to the land, executed his bond for titles to said Russell, conditioned to make titles to the land so soon as he obtained it; that said Russell, in December, 1846, sold said land to complainant for the sum of $200, which complainant has long since paid, and endorsed Owen's said title bond to him; that complainant immediately went into possession of said land, and has erected valuable improvements thereon; that Owen has obtained the legal title to the land, and, instead of conveying to complainant according to the stipulations of his said bond, has instituted his action of trespass to try titles to recover possession from complainant. The prayer of the bill is for an injunction of said action at law, and for a specific performance of the contract.

Owen, in his answer, denies that the contract between himself and Russell is correctly stated in the bill, and gives the following as the true history of the transaction: Long before the date of said title bond, he and Russell had been partners in a distillery, and about the time of the formation of the partnership he had contracted to sell Russell one hundred acres of land in said section seven, at $8 per acre, amounting to $800, of which sum Russell had paid $400; said partnership was dissolved after the expiration of about two years, and the matters of account between the parties, including the said transaction in reference to the land, were referred to arbitration; the arbitrators ascertained on a settlement of the accounts, that Russell was indebted to Owen in the sum of $575 82, and submitted two propositions for the adjustment of this balance, viz., that Russell should keep said one hundred acres of land, and pay Owen said sum of $575 82 when the latter made titles thereto; or that Russell should give up the land, and that Owen would then owe him $224 18, for which he should execute his bond to make titles to twenty-eight acres, a portion of said one hundred acres, so soon as he could obtain the legal title, and that Russell should not trespass on Owen's other lands. The parties accepted the latter proposition, and Owen thereupon executed his said title bond to Russell for said twenty-eight acres of land, in

pursuance of said award. The answer further alleges, that it was the understanding of the parties at the time of said award that Russell should give up to Owen the possession of said entire tract, except said twenty-eight acres ; that Russell has refused to comply with this stipulation, and has kept possession of the entire tract, and respondent, not having the legal title at that time, could not compel him to give it up ; that Russell, in violation of the terms of said award, has committed trespasses on respondent's other lands, and destroyed timber exceeding in value the said tract of twenty-eight acres ; that he is insolvent, and therefore unable to respond in damages ; and that complainant, since his purchase from Russell, has continued to trespass on respondent's land, and to destroy his timber.

The award, which is made an exhibit to the answer, is as follows :

"We agree, that Robert Owen shall give to said Russell his bond or obligation to make titles to a certain piece or parcel of land," (here follows a description of said twenty-eight acre tract embraced in the title bond afterwards given by Owen,) "the said bond to be conditioned to make titles to said land so soon as titles can be obtained by Owen ; and we further say, that Russell shall not trespass on the rest of the lands of Owen in his now enclosure, and that Russell is not to be interrupted in the possession of his place the present year."

The chancellor dismissed the bill, and his decree is now assigned for error.

N. W. COCKE and S. F. RICE, for appellant :

1. The award of the arbitrators contains *independent* stipulations, as to the acts to be performed by the respective parties. The execution of the bond was not dependent on the surrender of possession by Russell of the other lands ; and as the bond is absolute, and contains no condition as to such surrender, the surrender cannot be treated as part of, or in any wise connected with, the contract to convey.

2. The discretionary power of a court of equity, to refuse a decree for a specific performance, will only be exercised, when some good reason therefor exists, which is a part of, or is connected with, the contract itself. This is to be collected from all the authorities.

3. A court of equity will not refuse a decree for a specific performance, unless it be a case in which a court of law can afford full compensation.—Phillips v. Berger, 8 Barb. Sup. Ct. 527 ; Malins v. Brown, 4 Conn. 403 ; 3 Cowen 446 ; 1 Smith's Lead. Cases in Equity, 581.

4. As to the acts of Russell : Pulliam is a purchaser for a valuable consideration, and has made valuable improvements, without notice of any ground of defence on the part of Owen. Rangeley v. Spring, 21 Maine 130.

5. The record shows that, as to Russell, Owen had a complete remedy at law, either by writ of forcible detainer or trespass, the moment (after the first January, 1846,) that he refused to surrender provision of any of the lands outside of the bond, and an action of trespass against Pulliam for any trespass committed by him.

GEO. W. GUNN, *contra:*

An application for the specific performance of a contract is an address to the sound discretion of the court, which withholds or grants relief according to the circumstances of each particular case ; and in the exercise of such extraordinary jurisdiction, the court, though not exempt from general rules and principles of equity, acts with more freedom than when exercising its ordinary powers.—Tyson v. Watts, 1 Md. Ch. 13 ; 12 U. S. Dig. 227, §§ 112, 129. Specific performance is not a matter of absolute right, but of sound discretion in the court, (Waters v. Howard, 1 Md. Ch. 112,) the question being, not what the court must do, but what it may do under the circumstances.—Gould v. Womack, 2 Ala. R. 83. A specific performance will not be decreed when it would operate unjustly on the defendant.—Ellis v. Burden, 1 Ala. 459. Nor where the party who applies for it has omitted to execute his part of the contract.—Delage v. Hazzard, 16 Ala. 196. Nor in favor of an assignee, when new equities intervene, which are insisted on in bar of such performance.—McMorris v. Crawford, 15 Ala. 271. Complainant must show that he has been in no default, and that he has taken all proper steps towards performance ; because, if guilty of gross laches, his bill will be dismissed.—2 Story's Equity, §§ 770, 771 ; Casey v. Holmes, 10 Ala. 777.

Such being the well-settled rules touching the specific per-

formance of contracts,—the complainant not having done equity, nor come into court with clean hands, but having, by virtue of his position, kept the vendor out of the use of lands which his contract required him to give up, and having also trespassed upon the lands of his vendor by cutting down and destroying his valuable timber in violation of the stipulations of his contract,—he is not entitled to the aid of a court of equity, and his bill was properly dismissed; more especially, since the very trespass complained of was provided against by the contract. The question is here presented, as Russell's contract was that he should not trespass upon Owen's lands, how can he possibly show performance on his part, after having violated the stipulations of his bargain; and the same doctrine is applicable to complainant Pulliam, who has committed the like trespass. Russell, in like manner, violated the terms of his contract in withholding from Owen the possession of seventy-five acres of land. As neither has specifically performed his part of the contract, they cannot ask a specific performance.

GOLDTHWAITE, J.—We agree with the chancellor, that the only consideration for the bond for titles, as shown by the record, was the indebtedness of Owen to Russell to the amount of $224; so that, regarding the purchase money as fully paid, the first question is, whether the conduct of Russell has been such as to entitle him to the assistance of the court, had he been the complainant. It is true, that all applications to compel a specific performance are addressed to the discretion of the court; but this is not an arbitrary or capricious discretion, but one which is regulated, as near as may be, by general rules. White v. Damon, 7 Ves. 30. We have found no case where the contract was fair and reasonable, where a court of equity has gone entirely outside of the agreement to find a ground for refusing to interfere, unless it was to sustain an equitable set-off.—Lindsay v. Jackson, 2 Paige 582; Gay v. Gay, 10 ib. 377. We see great difficulty, if the chancellor, in withholding relief, is to institute an inquiry into the complainant's conduct in relation to the matters that have no connection with the contract sought to be enforced; and the authorities tend very strongly to show

that equity will not, in the exercise of its discretion, in applications for a specific performance, look to circumstances entirely independent of the agreement (Poole v. Shergold, 2 Brown's C. C. 118 ; Buckmaster v. Harrop, 7 Vesey 341 ; Croom v. Ledyard, 2 M. & K. 251) ; and in Byrd v. Odem, 9 Ala. 755, it was held, that a vendor could not resist the specific performance of his contract, by showing an indebtedness of the vendee to him, independent of his contract.—See, also, Seaman v. Van Rensselaer, 10 Barb. Sup. Ct. 81. In the case before us, Owen had, as we have seen, received the purchase money. It was paid by his indebtedness to the vendee, and the only reason why the arbitrators did not require him to make titles immediately, must have been because he had not then obtained the title from the government. He stands as the mere naked trustee for Russell, and unless he can hold the title to indemnify himself against the damages resulting from the trespasses of the latter on the ground of his insolvency, he is not entitled to do so on any other ground. There may be cases where the insolvency of a party authorizes a court of equity to set-off a debt, which would not under other circumstances be allowed as a set-off, either at law or equity (Tuscumbia R. R. Co. v. Rhodes, 8 Ala. 206) ; but unliquidated damages, sounding in tort, are not the subject of a set-off in either court.—Vose v. Philbrook, 3 Story's R. 335 ; 3 Johns. Ch. R. 351 ; Livingston v. Livingston, 4 ib. 292.— Again ; the purchaser of land, having paid the purchase money, has a lien for it upon the estate.—Sug. on Ven. 386 ; Kennedy v. Woolfork, 3 Hay. 197 ; 1 Meigs 52 ; 3 A. K. Marsh. 179 ; Har. Ch. 225 ; ib. 414. The vendor and vendee are trustees for each other—one of the land, and the other of the purchase money.—2 Story's Eq. 790, 793. But the lien of the vendee does not extend to other lands ; and although, upon the same principle which passes the lien of the vendor to his assignee (Roper v. McCook, 7 Ala. 318), the assignee of the vendee would be entitled to enforce his lien against the land, yet the lien of the vendee or his assignee does not extend to other lands, and for this reason a sale by the vendee before title passes ought not to take with it the burden of discharging a distinct and separate liability in no wise connected with the sale.

The chancellor should, under the circumstances, have compelled the defendant Owen specifically to perform his contract, and enjoined him from the prosecution of his suit at law ; and the decree rendered by him must therefore be reversed, and the cause remanded, in order that a decree may be rendered in conformity with this opinion,—the costs of this court to be taxed against the appellee Owen.