[Stouts Mountain Coal & Coke Co. v. Ballard.]

# Stouts Mountain Coal & Coke Co. *v*. Ballard.

### Damages for Polluting Stream.

(Decided November 4, 1915.　70 South. 172.)

1. **Water and Watercourses; Pollution; Complaint.**—The complaint examined and held good as showing one continuous wrong as distinguished from separate and distinct offenses.

2. **Nuisance; Pollution; Prescription.**—One who allows another to maintain a private nuisance by using, polluting or diverting water for ten years without objection, is precluded from recovering damages growing out of the creation or maintenance of such a nuisance.

3. **Same; Public; Prescription.**—The right to maintain a public nuisance cannot be acquired by prescription.

4. **Same; Private.**—The right to maintain a private nuisance may be acquired by prescription.

5. **Same; Prescriptive Right; User.**—In order to establish a prescriptive right to maintain a nuisance, the user must not only be open, adverse and continuous, but with the knowledge and acquiescence of the person whose right is invaded, and of such a nature as to produce a uniform result during the period of adverse user.

6. **Same; Pollution; Tacking Periods.**—The mere user of another's land or water by a diversion or pollution of the water course or by overflowing the lands for the period necessary to bar recovery, in such a way that the use is not injurious or destructive for part of such time will not authorize the tacking of that portion of the time to the succeeding portion during which the burdens have been increased or enlarged to the extent of producing actionable injury, although the method of user by the adverse claimant be uniform during the entire period.

7. **Waters and Water Courses; Pollution; Evidence.**—Where the action was for damages for polluting a stream, and it did not appear that conditions where cattle of a witness drank were identical with those at the point where plaintiff's cattle refused to drink, it was not error to exclude the testimony of a witness that his cattle drank regularly from a creek into which the stream flowed.

APPEAL from Cullman Circuit Court.

Heard before Hon. D. W. SPEAKE.

Action by J. J. Ballard against the Stouts Mountain Coal & Coke Company. Judgment for plaintiff, and defendant appeals. Transferred from the Court of Appeals under section 6, p. 440, Acts 1911. Affirmed.

There were four counts in the complaint, to which defendant filed the plea of the general issue, and the special pleas 2, 3, 4,

and A and B, and pleas 3 and 4 were then amended, and on motion were stricken as to the amendment, and issue was joined on pleas 1 and 2. In its complaint plaintiff alleges that for many years he has been lawfully possessed of certain real estate therein described, and with his family resides upon said land as his home, and farms said land for a livelihood, and maintains from 20 to 30 acres in pasture for the keeping of his cows and other stock; but there is a certain spring branch that flows along and through the said land described above, and that prior to the unlawful and wrongful acts of defendant hereinafter complained of said branch afforded abundant, pure water, good for stock and domestic purposes; that defendant is engaged in operating mines and mining coal from lands above and adjoining plaintiff's land, and that, in operating its said mine, defendant permitted volumes of water to overflow upon the lands of plaintiff and into the spring branch as aforesaid, which waters were charged with filth, iron rust, alum, dynamite, and powder, and in consequence it polluted and contaminated the water in said spring branch until the same is wholly unfit for use, either for stock or for general domestic purposes, and as a proximate consequence thereof the lands of plaintiff have been rendered greatly less in value, the rental value thereof has decreased, and other injuries not necessary to be here set out. The other counts follow in varying phraseology the one above set out. The demurrers were that it was uncertain whether damages complained of are the result of one or a succession of overflows, and it is uncertain whether the complaint contains more than one cause of action. It does not appear that the act of the water flowing from defendant's land over plaintiff's land was due to any act of negligence upon the part of defendant, or that it was an unlawful use of defendant's land or the water on the land. It does not appear that defendant made unreasonable use of any streams running through its lands and plaintiff's lands in such a way as to damage plaintiff, nor does it show that plaintiff's damage or injury is due to other than the natural drainage from defendant's land, nor does it show any unlawful use of defendant's land. It does not appear that defendant used said water in the operation of its mine, nor is it shown that the said water flowing upon plaintiff's land was occasioned by any other than lawful acts upon the part of defendant; and it does not appear

[Stouts Mountain Coal & Coke Co. v. Ballard.]

whether said water was caused to flow on the land of plaintiff by one act of defendant, or whether the flowing was continuous or whether there was separate and independent overflows.

The following are the pleas: (1) General issue.

(2) That defendant has acquired an easement in the use of said stream of water for the purpose for which it is alleged it is being used by this defendant in the complaint by so using the same for a period of 10 years.

(4) Defendant says that it has for a period of 13 years been maintaining and operating a mine on the headwaters of Thacker's creek; that in maintaining and operating said mine it had constructed near the mine about 110 houses for use to miners, the nearest house being within about 40 feet from the creek, and the farthest house a mile and a quarter therefrom; that for years, in the operation of said mine, fire clay had been dumped out of the mine on the hillside, over which the water from the mines flowed in the direction of the creek, and at times into the creek; that it maintained a barn and from 20 to 25 head of stock on the premises near the mine, and within some 400 yards of the creek; that the mines of defendant lay in such shape that the fire clay and dump from the mine and the water issuing therefrom naturally flows towards the creek, and that said dump could not be disposed of in any other way than by long hauls to remove same away from the territory, at great and ruinous expense to the operation of the mine; that the mine is operated in a proper and well-regulated manner, and such as is usual in well-regulated mines, and that it was necessary for the maintenance and operation of said mine to keep and maintain houses in close proximity to the mine for the use of miners and stock, and a place to house the same in order to properly operate said mine, and that such is reasonable and is the custom of well-regulated mines; that, where said mining houses are located and said barn is located, the natural drainage of the same is toward the creek.

The amendment to plea 3 was as follows, and was stricken: (3) That it has been owning and operating the mine described in the complaint and manufacturing coal for a period of more than 10 years consecutively next prior to the filing of this suit; that during all this time it has dumped fire clay and refuse matter from its mines upon the slope of the hill and discharging

water from the mine over said dump and over the fire clay into Thacker's creek, and by reason of said use has acquired an easement in said stream for the purposes therein alleged.

Amendment to plea 4 by adding thereto the following: The mining of said coal necessitates the placing of fire clay and sediment where it may flow into said creek, which constitutes the natural and only drainage of the section and territory where the said coal and coal mine is situated; that said coal was manufactured for the use of the public; that the mines during all this time have been operated with expense and care, and the means and manner of said company in operating said mine are reasonable and necessary to the successful operation of same.

Plea A: Defendant used its said mine and the said branch in the manner alleged in the complaint, openly, notoriously, hostilely, and adversely to plaintiff and all othr persons for a period of 10 years prior to the institution of this suit, and its said mines and said branch were used by it for said period in the same manner as it was being used at the time of the institution of this suit.

Plea B: For further answer to said complaint and each count thereof, defendant says that it used its said mines and said spring branch in the manner alleged in the complaint for a continuous period of 10 years prior to the institution of this suit; that its said use of said mine and branch was open, notorious, hostile, adverse, and under claim of right, and the use thereof of said period was in the same manner and character as was the use thereof at the time of the institution of this suit.

As to the evidence of McMurray the bill of exception shows: The witness testified that his stock drank regularly water from Thacker's creek in his pasture below the mines, where they were located, and had been doing so for two years. Plaintiff objected to this statement of the witness, and moved to exclude same from the jury. The court sustained this objection, and excluded the testimony from the jury's consideration.

F. E. St. John, and Callahan & Harris, for appellant. Brown & Griffith, for appellee.

Anderson, C. J.,— (1) There was no error in overruling the defendant's demurrer to the complaint. It showed but one

continuous wrong, as distinguished from separate and distinct overflows.

"It is the established doctrine that the exclusive enjoyment of water, or any other easement, in a particular way, for a length of time which is the period of the statute of limitation, enjoyed without interruption, is sufficient to raise a presumption of title as against the right of any other person which might have been, but was not, asserted."—*Ala. Consolidated Co. v. Turner,* 145 Ala. 639, 39 South. 603, 117 Am. St. Rep. 61, and cases there cited.

This rule seems to apply to a pollution of the water by means of the exercise of certain trades, as well as to the diversion, taking, or diminution of the quantity of same.—Angell on the Law of Water Courses, § 205; 1 Amer. Enc. of Law, 875; *Turner's Case, supra.*

(2) It is, no doubt, true that a party suffering injury from a nuisance is not compelled to sue as for the creation of same, but can recover for injury caused by the maintenance of same, but this does not alter the doctrine that, if he sits supinely by and permits another to use his water or divert or pollute same without taking action for ten consecutive years, he is precluded from recovering damages growing out of the creation or maintenance of what is termed a private nuisance, as contradistinguished from a public nuisance.

(3-6) The law is well settled that the right to maintain a public nuisance cannot be acquired by prescription.—*Mayor of Birmingham v. Land,* 137 Ala. 546, 34 South. 613; *Reed v. Birmingham,* 92 Ala. 348, 9 South. 161. On the other hand, a person may acquire by prescription the right to maintain a private nuisance.—29 Cyc. 1206; *Turner's Case, supra; Crumbaugh v. M. & O. R. R.,* 105 Miss. 485, 62 South. 283. In order to establish a prescriptive right, the user must not only be open, adverse, and continuous, etc., but with the knowledge and acquiescence of the person whose right is invaded.—29 Cyc. 1206. And the use must be such as to produce a uniform result during the period of adverse claim or holding; that is, the mere use by one of another's land or water, by a diversion of the water or a pollution of same or by overflowing the land for the period necessary to bar a recovery, in such a way, a portion of the time, as not to be injurious or destructive to the owner, will not authorize

the tacking to that period succeeding years in which the burdens upon the owner were increased or enlarged to the extent of producing injury or destruction, although the method of user by the adverse claimant of the cause producing the result may be the same. The mere fact that this defendant used its mine and the plaintiff's branch in the manner alleged in the complaint adversely for ten years as it was being used at the time the suit was brought as set out in pleas A and B does not show that the results to the plaintiff were uniform, or the same, during said period. From aught that appears, the use may have been the same, and yet the results may have been very different after a certain length of time. The branch may have been used all the time and in the same manner, but the pollution of the water may have gradually grown so as to render it unfit for use during the last period, but which was not the case during the first part of the time, and the deposits may have been harmless at first, but gradually increased to the extent of injuring or destroying the value of the land upon which it was permitted to accumulate.— *Sloss Co. v. Morgan,* 181 Ala. 587, 61 South. 283, and authorities there cited. We therefore hold that the trial court did not err in sustaining the plaintiff's demurrer to these pleas. It is true that pleas A and B are similar, though not identical, to pleas 4 and 5, which were held good in the *Turner Case, supra,* but a careful examination of the opinion in said case will disclose that these pleas were held good upon the theory that plaintiff's action was solely for the use of his water. If the defendant had been using the water in the same manner for ten years, and inflicted no other injury upon the plaintiff, it might be that the plaintiff could not complain of the same continuous use of the water by the defendant after ten years. It may be that the court did not properly construe the complaint in the *Turner Case, supra* (if it is correctly set out by the reporter), but the opinion is based upon the idea that the gravamen of the action was for using the water, and thereby depriving the plaintiff of the use of same for a continuous period of ten years, and, such being the case, it is no authority against this holding that pleas A and B are bad. These pleas attempt to answer a complaint not only for a pollution of the water, but also for depositing debris upon the plaintiff's land, and which said pleas do not set up that the result of the use of its mine and the branch produced this same

result during the entire period of ten years. While we can differentiate this case from the *Turner Case, supra,* when looking to the reasoning of the opinion in said case, we do not wish to be understood as indorsing the soundness of same as applied to the complaint as it appears in the report of the case. The pleas may have been good to the complaint as the court seems to have construed it, but the court seems to have overlooked the fact that the complaint not only charged the defendant with the diversion and pollution of the water in the creek by operating a pumping station and ore washers, but also claimed damages for injuries resulting from the negligence of the defendant in permitting his dam to break, whereby the plaintiff was thereby damaged within 12 months prior to bringing the suit.

(7) We cannot agree with counsel for the appellant in the insistence that the trial court excluded all of the evidence of the witness McMurray, as set out in the bill of exceptions, but are of the opinion that only the statement immediately preceding the objection was excluded, to wit, "that his stock drank regularly water from Thacker's creek below the mines, where they were located in his pasture, and had been doing so for two years." We may concede that this would have been competent had the evidence shown that conditions were identical where cattle of the witness drank and in the branch from which plaintiff's cattle would not drink, but the evidence does not show that conditions were the same. The flow of water may have been so great in the creek that the deposits, though greater than those going into the plaintiff's branch, may not have so polluted the water as to keep cattle from drinking it; yet the small branch of the plaintiff may have been so polluted by a smaller escape or deposit from the defendant's mine.

Assignment of error 22 refers to the refusal of charge 21 requested by the "plaintiff," and not the defendant, the appellant. We find no such charge requested by the "plaintiff," but, if the plaintiff had requested such a charge, and the court refused to give it, the defendant cannot complain of such refusal.

There is no merit in the other insistence of error.

The judgment of the circuit court is affirmed.

Affirmed.

McClellan, Sayre, and Thomas, JJ., concur.