(83 South. 107)

## FOLMAR MERCANTILE CO. v. TOWN OF LUVERNE. (4 Div. 770.)

(Supreme Court of Alabama. June 30, 1919. Rehearing Denied Oct. 23, 1919.)

1. APPEAL AND ERROR ☞987(3)—REVIEW AFFECTED BY VIEW OF PREMISES BY JUDGE.

In action by complainant property owner to abate public nuisance created by buildings constructed in streets of defendant town, *held* that question whether the fact that plaintiff may recover damages at law defeats his right to equitable relief by injunction, and a question whether court was justified in denying writ under the particular facts and circumstances are open to review on appeal, though the parties agreed that court view the locus in quo and use the knowledge gained, and the record does not afford the court on appeal the knowledge gained by the judge by view.

2. MUNICIPAL CORPORATIONS ☞671(8) — STREET OBSTRUCTION; DENIAL OF ABATEMENT IF PUBLIC WOULD SUFFER.

In action by complainant property owner to abate public nuisance created by buildings constructed in streets of defendant town, *held* that trial court properly declined to grant injunctive relief; complainant's damages being slight compared with loss and injury that defendant town and the public would suffer if obstructions were abated.

3. MUNICIPAL CORPORATIONS ☞671(9) — STREET OBSTRUCTIONS; DISMISSAL OF SUIT TO ENJOIN.

In an action by complainant property owner to abate public nuisance created by buildings constructed in streets of defendant town, *held* that while injunctive relief was properly denied, the bill should not have been dismissed, since after the court acquired jurisdiction it should have proceeded to determine the question of damages. (Per Mayfield, Somerville, and Gardner, JJ.)

4. MUNICIPAL CORPORATIONS ☞671(9) — STREET OBSTRUCTION; BILL TO ENJOIN PROPERLY DISMISSED.

In action by property owner to abate public nuisance created by buildings constructed in streets of defendant town, *held* that complainant's bill was properly dismissed. (Per Sayre, J.)

Anderson, C. J., and McClellan and Thomas, JJ., dissenting in part.

Appeal from Circuit Court, Crenshaw County; A. E. Gamble, Judge.

Bill by the Folmar Mercantile Company against the Town of Luverne, to abate a public nuisance. From a decree for respondent complainant appeals. Affirmed.

A. A. Evans, W. A. Gunter, and Arthur B. Chilton, all of Montgomery, for appellant. Frank B. Bricken, of Luverne, for appellee.

McCLELLAN, J. The appellant filed this bill against the town of Luverne and others, seeking to abate public nuisances created by buildings erected in two streets of that municipality. These public ways are described in the record as "Le Grande avenue" and "Seventh street," respectively. The former runs north and south, and the latter east and west. Le Grande avenue either attinges or intersects Sixth and Seventh streets, the latter street being 80 feet in width. Complainant's lot, with a small building thereon, abuts the south side of Seventh street, opposite the point where, on the north side of Seventh street, Le Grande avenue either attinges or intersects the north line of Seventh street.

In the answer of the respondents (third paragraph) it is admitted that Le Grande avenue "was dedicated as a street by the Luverne Land Company, the owner of the freehold at the time of the survey and plat of said town of Luverne, Ala.," and that the same is 80 feet in width. That there was an efficient, perfected dedication of these ways to the public use, vesting, so far as this record shows, an easement only in the public (28 Cyc. pp. 845, 846) through an appropriate, recorded platting of the area and the subsequent sale of one or more lots with reference to the plat, as well as the assumption of dominion over Le Grande avenue, as a public street, by the town authorities in erecting the structures in it, is beyond question. Roberts v. Matthews, 137 Ala. 523, 528, 34 South. 624, 97 Am. St. Rep. 56; Moragne v. Gadsden, 170 Ala. 124, 54 South. 518, among others. If, however, the dedication to public use was not effective, the right of the reversioners, the owners of the fee, to recover the thus appropriated area would present inquiries and the application of principles not at this time pertinent. It is clear from the record that the structures put in Le Grande avenue by the municipal authorities, though they are of a purely public nature, as well as the shed erected within the lines of Seventh street by the Crenshaw County Gin Company under the license of the municipality, are obstructions in these effectually dedicated public ways, and therefore constitute public nuisances; and this is true whether the obstructions only partially interfere with the commodious use of both these streets, the public right to their unimpeded use being coextensive with the entire surface thereof. State v. Mobile, 5 Port. 279, 30 Am. Dec. 564; 4 Notes on Am. Dec. 1214–1216, annotating our case of State v. Mobile; First Nat. Bank v. Tyson, 133 Ala. 459, 472, 473, 32 South. 144, 59 L. R. A. 399, 91 Am. St. Rep. 46; Costello's Case, 108 Ala. 45, 18 South. 820, 35 L. R. A. 303; 28 Cyc. 853, 854; Joyce on Nuisances, § 214; City of Troy v. Watkins, 201 Ala. 274, 78 South. 50; Greil v. Stollenwerck, 201 Ala. 303, 78 South. 79; Hausman v. Brown, 201 Ala. 331, 77 South. 993, 994, 995. The excavations and obstructions made and erected in these public ways were and are inconsistent with the use

of them as highways, to which purpose alone they were dedicated. Author, supra. These obstructions and encroachments upon these highways are permanent in their very nature. Being permanent in their very nature, and the public nuisance created by them being conclusively established, if not in legal effect admitted, the only open question is whether or not this complainant, who invokes the power of the court of equity to abate these public nuisances, suffers because thereof such a special peculiar injury, in respect to his property, as would authorize his appeal to the injunctive power of the court of equity to abate them. Duy v. Ala. Western R. R. Co., 175 Ala. 162, 174, 177, 57 South. 724, Ann. Cas. 1914C, 1119; City of Troy v. Watkins, supra; Greil v. Stollenwerck, supra; Hausman v. Brown, supra—among others readily accessible.

For more than three-quarters of a century it has been regarded as the settled doctrine of this jurisdiction that an existing public nuisance created by the obstruction of or encroachment upon a public street will be abated, or a threatened nuisance of that character prevented, through the power of a court of equity to issue injunctive process at the suit of a complaining property owner who is thereby damaged in his property rights different in kind and degree from the damages suffered by the public generally. Bank v. Tyson, 133 Ala. 459, 32 South. 144, 59 L. R. A. 399, 91 Am. St. Rep. 46; Bank v. Tyson (second appeal) 144 Ala. 457, 39 South. 560, among numerous other of our decisions cited in them. So far from conditioning or qualifying the absolute right to injunctive process, under the circumstances stated, to abate or to prevent this character of public nuisance upon the weighing or balancing of the relative convenience or loss of the parties if the injunction is issued or denied, this court has long since deliberately declared, even on hearing for the temporary writ, that the relative prejudice between the parties resulting from the granting or the refusal to grant the writ was "wholly immaterial" (Bank v. Tyson, 133 Ala. 475, 32 South. 149, 59 L. R. A. 399, 91 Am. St. Rep. 46); and in this case on second appeal (144 Ala. 468, 39 South. 561) that sound view was further emphasized in these words:

"And the fact that no actual damages can be proved, so that in an action at law the jury could award *nominal damages only* often furnishes the very best reason why a court of equity should interfere in cases where the nuisance is a *continuous one.*" (Italics supplied.)

One reason, among others, for this preservative, conservative doctrine, which refutes recourse to a comparison of results to accrue from abating or preventing a public nuisance of this character, is that the creator of a public nuisance of this type whether the creator is a person, corporation, or municipal body— is an offender against the laws; and to extend to an offender the consideration that would institute a pecuniary comparison from which to deduce relative prejudice or benefit between the parties to result from granting or denying injunctive process to abate or to prevent a public nuisance would reward, not condemn, the offender, to the prejudice of the property owner who is specially, peculiarly damaged by the offender's act—in proportion as he made or would make outlay to effect the creation of the public nuisance. Our laws contemplate no such invidious discriminations or comparisons, certainly not with the view to determining whether vested rights are to be protected or vindicated in the courts against unlawful invasions. The suggestion that the public may have an interest to be considered and conserved by refusing, at the suit of a specially damaged property owner, an injunction to abate a permanent, continuous public nuisance is based upon a logical impossibility—in fact as well as in terms—for a conclusively shown public nuisance of this character is such because it offends the public right to the unimpeded use of the whole public highway. To say that the public has an interest opposed to or to be weighed against a property owner's complete relief, in one proceeding in equity, from the peculiarly, specially damnifying consequences immediately resulting from a public nuisance involves the affirmation, obviously incongruous, that the public may have an interest, worthy to be considered and protected, that is palpably opposed to public law. Of course, the public, no more than an individual, cannot have an interest or right opposed to the law. Indeed, a complaining property owner, who is peculiarly damaged by a public nuisance of this character, is asserting the public right against a wrong to the public; and a denial of the repeatedly approved remedy by injunction to abate a public nuisance cannot be predicated of a theory that would introduce this palpable contradiction: That out of such a public wrong, such a public offense, a right or equity may accrue to the public to prevent the abatement, the removal of the very obstacle, in the public highway, that constitutes the public wrong, the public nuisance. It is because no right can be predicated of such a public wrong that neither rules of prescription nor statutes of limitations are available to preserve, against injunctive process, the offending status in a public highway. Reed v. City of Birmingham, 92 Ala. 339, 348, 349, 9 South. 961; Stouts Mountain Co. v. Ballard, 195 Ala. 283, 287, 70 South. 172.

Allied with the like idea of the sanctity and permanency of the public right in public highways, effectually dedicated to public use, it has been often held in this court that the failure, omission, or refusal of public authorities to open, use, or repair a public highway for however long will not affect or prejudice the public right therein. Smith v.

Opelika, 165 Ala. 630, 51 South. 821; Rudolph v. City of Birmingham, 188 Ala. 620, 632, 65 South. 1006.

It is thought by some that individual observations made by Justice Turner in Attorney General ex rel., etc., v. Sheffield Gas Consumers' Company, 3 De G. M. & G. *304, *319, 19 Eng. Ruling Cases, 273, 277, justify a conclusion affected with the consideration that the public may have an interest or benefit in the continuance of a public nuisance that may qualify the right of a 'specially damaged property owner to injunctive process to abate or to prevent a public nuisance. A reading of the opinions subsequently delivered in Attorney General v. Cambridge Gas Co., 19 Eng. Ruling Cases, p. 289, will readily disclose the mistake of so regarding the individual statement of Justice Turner in the Sheffield Case, supra. It will suffice to note, in this connection, that the action there sought to be enjoined was but a temporary interference with the use of the street, resulting from the process of laying pipes in the bed of the street, not a case, as here, where the street was permanently, continuously obstructed by permanent structures.

The reference in Clifton Iron Co. v. Dye, 87 Ala. at pages 470, 471, 6 South. 192, Stone, C. J., writing, to the weighing of the injury that might accrue to the public if the injunction there sought was granted had no sort of relation to cases where injunction to abate a public nuisance, caused by obstruction of or encroachment upon a public street, entailing peculiar injury to a property owner, was the relief sought. The decisions and texts therein cited, as well as the case before this court, demonstrate this fact. There the bill, by a lower riparian proprietor, sought to enjoin the pollution of the stream by an upper proprietor. The court decided that the upper proprietor had a right to use the street to "wash" its ores, in the stream flowing through its domain. How radically different where the act done creates a permanent public nuisance, positively offensive to the law and the public right, and peculiarly, specially, injuring the complaining property owner!

In McBryde v. Sayre, 86 Ala. 458, 462, 5 South. 791, 792, 3 L. R. A. 861, the relief sought by way of injunction, to quote the opinion, partook "largely of the nature, of a bill for specific performance," the court announcing the familiar rule that relative conveniences or inconveniences will be weighed, expressly restricting the exercise of the discretion in mind to the benefit of "an unoffending party." Certainly, the creator of a public nuisance cannot claim the consideration .accorded, in some circumstances, to "an unoffending party."

Whether a complainant seeking injunctive relief against a public nuisance which peculiarly inflicts damage upon his property discharges this burden, this condition to any right in him to invoke equity to abate a nuisance presents a question of mixed law and fact, following averments in his pleadings effective to raise that issue. This complainant, appellant, sought to meet the burden through allegations and evidence that went to these effects: That the natural flow of surface waters was so charged by these encroachments upon Le Grande avenue and Seventh street as to precipitate surface waters, in undue volume, upon his lot, to his damage; that the easement of access to his lot was wrongfully impaired; that the easement of view from his lot, to the north across Seventh street, was thereby interfered with; and that the noise, dust, etc., incident to the operation of the town's water, light, and ice plant in Le Grande avenue and of the gin, the shed only of which appears to be in Seventh street, wrought a diminution of the value as well as the income from the rental of his premises. Aside from the matter of the precipitation on the lot of surface waters, the complainant's claims of special, peculiar injury, proximately resulting from the obstructions, appear to be similar to those asserted in Bank v. Tyson, 133 Ala. and 144 Ala., supra. As readily appears from consideration of that case on both appeals and that of State v. Mobile, supra, among others, the applicability of the doctrine of these cases cannot be discriminated because in the former only the foundations of the encroachments had been laid within the lines of the street; whereas, in the Mobile Case one of the obstructions had already been placed in the street. It appears from this record that an agreement was entered into between the parties under the terms of which the court viewed the locus in quo involved in this cause, the agreement stipulating "that the court in reaching its decision in this cause shall (should) use the knowledge gained by said inspection * * * in connection with all the testimony in the case," and requesting the chancellor "to set out in succinct form the facts as he found them by his personal inspection." The recitals of the record preceding the decree disclose that the inspection contemplated was made. It thus affirmatively appears that the court below had before it evidential matter, immediately bearing upon the issue of fact stated, that this record does not afford this court—evidential matter that, by positive agreement of the parties, was made such for its effect upon the judicial judgment. This court is exercising in this cause an appellate function only, to review the decree predicated necessarily of the conclusion of fact attained by the court below. It has been long and repeatedly declared in this court that where the trial court had before it pertinent evidential matter not presented or made avail-

able to this court on appeal, the conclusion of fact prevailing in the trial court cannot be reviewed or revised.

Jefferson v. Sadler, 155 Ala. 539, 46 South. 969, where it was said:

"Therefore, it affirmatively appearing that there was evidence before the chancery court which is not set out in the record, according to our former decisions, we hold that we cannot review the conclusions of the chancellor on the facts."

Wood v. Wood, 119 Ala. 185, 24 South. 842, where it was said, Brickell, C. J., writing:

"It is a settled rule that the conclusion or finding on the facts by the chancellor will not be reviewed when it affirmatively appears that there was evidence before the court which is not set out in the record."

Faught v. Leith, 201 Ala. 452, 78 South. 831, where it was said:

"The decree of the court discloses that the conclusion reached was based upon the affidavits, and *also upon this personal investigation of the property thus visited.* Clearly, therefore, this court has not before it the full evidentiary data the trial court had, and his conclusion upon the facts will not therefore be here disturbed." (Italics supplied.)

The like rule was applied in Hale v. Tenn. Co., 183 Ala. 507, 62 South. 783; McPherson v. Hood, 191 Ala. 146, 67 South. 994; Jones v. Jefferson County et al., ante, p. 137, 82 South. 167; Dancy v. Ratliff, 201 Ala. 162, 77 South. 688, 690, among others.

ANDERSON, C. J., and THOMAS, J., concur with the writer in that part of the foregoing opinion stating and applying the rule which forbids review in this court of the conclusion of fact obtaining in the trial court, where the trial court had relevant evidential matter that is not presented to this court; and for that reason ANDERSON, C. J., and THOMAS, J., together with the writer, are of the opinion that the decree appealed from should be affirmed. The views of the other Justices are set forth in the respective opinions of Justices SOMERVILLE, MAYFIELD, and SAYRE. The decree is affirmed for the reasons stated in the opinions of McCLELLAN, J., and SAYRE, J.

MAYFIELD, SOMERVILLE, and GARDNER, JJ., dissent.

SOMERVILLE, J. Where the record shows on appeal that the trial court had before it testimony, or documentary evidence, not presented to the appellate court, and which could have affected the result, it is well settled that the judgment or decree will not be reviewed or disturbed on appeal. The precedents are numerous, and the more recent of them are cited in the minority opinion of Mr. Justice McCLELLAN.

However, it has never been held in this state that the mere fact of a view of premises by judge or jury is a bar to review of the judgment on its conclusions of fact.

We think the correct rule in such cases was stated by Shaw, C. J., in Davis v. Jenny, 1 Metc. (Mass.) 222 (denying the proposition that a court cannot set aside a verdict based upon inspection):

"The authority of a court to set aside a verdict does not depend upon the nature and quality of the evidence, upon which the jury have found it; though it often happens that the character of the evidence is such as to afford the jury much better means of judging of it than the court can have of reviewing it; as where much depends upon localities, and the jury have a view. * * * In all such cases, the consideration that the jury had means of judging of facts which cannot afterwards be laid before the court, in their complete strength and fulness, will always have a prevailing and often a decisive influence upon the judgment of the court in support of the verdict."

It will often happen that a view of premises cannot, from the nature of the case, or upon the admitted facts, have any bearing whatever upon the primary rights at issue, though it may affect subsidiary questions, as, for example, particular items of damage and the extent of the injury, if any. Certainly, in the case of a bill to foreclose a mortgage or a vendor's lien on land, a view of the land by the chancellor, whatever he might see, would have no bearing on a decree granting or denying relief.

It is to be observed also that, although a view of premises may be relevant to the determination of the primary rights at issue, the right to a review of the judgment on appeal ought not to be denied to the parties; otherwise, the right of appeal on issues of fact could be effectually destroyed by the mere act of the trial court in directing a view by the jury, or in taking a view by the judge, which can be done at the court's discretion, without the request or assent of either party. 38 Cyc. 1313, J; U. S. C. I. Pipe, etc., Co. v. Granger, 172 Ala. 546, 55 South. 244.

The decree which is presented for review contains the following statements and explanations:

"On consideration I am of the opinion that the damage suffered by complainant by reason of the obstruction of said streets would be the difference between the value of the property of complainant before the erection of said obstructions, and the value of the same after their erection. This being true, complainant has a complete and adequate remedy at law, and may bring his suit in the law court and recover judgment therefor.

"After a review of the evidence, and also after inspecting this property at the request of the parties, I am of the opinion that the water flow has not been diverted from its natural

course by reason of the acts complained of, and that complainant is not entitled to recover therefor." '

Upon these considerations the bill of complaint was dismissed.

It thus appears that the only question affected by the trial judge's view of the premises was with respect to complainant's damage by reason of a diversion of the flow of rainwater from its natural courses. This finding, made upon actual view, ought not to and will not be disturbed by this court. But the decree concedes that complainant has suffered damage by reason of the obstruction of the street, so that complainant's right to relief is in no wise affected by the denial of the other element of damage, since any element of damage will suffice for the equity of the bill, so far as damage is concerned.

Manifestly, then, the questions to be reviewed are: (1) One of law, viz., whether the mere fact that complainant may recover damages at law as compensation for the diminished value of its property defeats its right to equitable relief by injunction for the removal of the obstruction; and (2) one of judicial policy, viz., whether, conceding the abstract equity of the bill for injunctive relief against a public nuisance, the court was nevertheless justified, in the exercise of a sound judicial discretion, in denying the writ under the particular circumstances and conditions here exhibited.

[1] A majority of the court, consisting of Justices SAYRE, MAYFIELD, GARDNER, and the writer, are of the opinion that these questions are open to review on this appeal.

MAYFIELD, J. [2] I concur in the opinion of Justice SOMERVILLE, and am also of the opinion that the trial court properly declined to abate the premises of respondent, though it be a partial obstruction of a public street, and therefore a nuisance, and though it be conceded complainant suffered some damages. The obstruction of the street was only partial, and not total at worst. Complainant's damages and injury were slight compared with the loss and injury that respondents and the public would suffer if the obstruction was abated as prayed in the bill. In such cases injunction by means of abating the partial obstruction of the street is not a matter of absolute right, but is a right resting in the sound judicial discretion of the trial court, subject, however, to review and revision by the appellate court. The right to injunctive relief is analogous to the right to relief by way of specific performance, which is not absolute and unvarying, but rests in the sound discretion of the courts and depends upon the circumstances and facts of each particular case.

As early as 1746, Lord Hardwicke said:

"The constant doctrine of this court is that it is in their discretion whether they will decree a specific performance, or leave the plaintiff to his remedy at law." 3 Atk. 388.

This doctrine has been steadily maintained, down to the present time. Seymour v. Delancey, 6 Johns. Ch. (N. Y.) 222; Ellis v. Burden, 1 Ala. 458; 2 Story's Equity, 736, 742. "The question is, not what the court must do, but what the court may do under the circumstances." This discretion is not an arbitrary assumption of authority, but a sound discretion, regulated, as near as may be, by general rules. Pulliam v. Owen, 25 Ala. 492; Sims v. McEwen's Adm'r, 27 Ala. 184; Casey v. Holmes, 10 Ala. 777.

In reference to injunctions this and other courts have recognized and followed the same axioms and rules as to this remedy. It has been said:

"In theory its purpose is to prevent irreparable mischief; it stays an evil the consequences of which could not adequately be compensated if it were suffered to go on." Gilbert v. Showerman, 23 Mich. 448; Bemis v. Upham, 13 Pick. 169.

The writ "is not ex debito justitiæ for an injury threatened or done to the estate or rights of a person; but the granting it must always rest in sound discretion, governed by the nature of the case." Enfield Toll Bridge Co. v. Conn. River Co., 7 Conn. 50. As is said in another case, "Injunction is not of right but of grace." Sparhawk v. Union Passenger R. Co., 54 Pa. 454. "There is no power the exercise of which is more delicate, which requires greater caution, deliberation, and sound discretion, or [is] more dangerous in a doubtful case, than the issuing an injunction; it is the strong arm of equity, that never ought to be extended unless to cases of great injury, where courts of law cannot afford an adequate or commensurate remedy in damages." Bonaparte v. Camden & A. R. Co., Baldw. 218, Fed. Cas. No. 1617. The court looks beyond the actual injury to contemplate the consequences, and however palpable may be the wrong, it will still balance the inconveniences of awarding or denying the writ, and adjudge as these may incline the judicial mind. Grey v. Ohio & P. R. Co., 1 Grant, Cas. (Pa.) 412; Varney v. Pope, 60 Me. 192; Bosley v. McKim, 7 Har. & J. (Md.) 468. Even in the case of a palpable violation of a public right to annoyance of an individual, he must show the equity which requires this summary interference as the only adequate means of obtaining justice. Sparhawk v. Union Passenger Ry. Co., 54 Pa. 401; Edwards v. Allouez Mining Co., 38 Mich. 49, 50, 31 Am. Rep. 301.

The English and American cases are reviewed in the reports of the following cases, and notes thereto appended. See series of cases reported in 13 Eng. Rul. Cases, pp. 56–

118, and notes; and Deane's Case, 132 N. Y. 355, 30 N. E. 741, 28 Am. St. Rep. 584–589; Ladd v. Boston, 151 Mass. 585, 24 N. E. 858, 21 Am. St. Rep. 498, and notes.

In 'our own case (McBryde v. Sayre, 86 Ala. 458, 5 South. 792, 3 L. R. A. 861), Stone, C. J., said:

"The relief sought in this case is by injunction, and it partakes largely of the nature of a bill for specific performance. Neither of these modes of relief is of absolute, unbending right.. In granting or withholding the former, the court weighs the conveniences and inconveniences in the first instance, and when very great injury will result to an unoffending party, by the stern fiat thou shalt, or thou shalt not, often leaves parties to their remedies at law. Chambers v. Ala. Iron Co., 67 Ala. 353; Davis v. Sowell, 77 Ala. 262; S. & C. Ry. Co. v. S. & B. Ry. Co., 1 Sim. N. S. 410; Hack Imp. Co. v. N. J. M. Ry., 7 N. J. Eq. 94; 3 Pom. Eq. § 1338; Wash. Easements, 577, top. p. (4th Ed.) 749; Wood v. Sutcliffe, 2 Sim. N. S. 163."

In a later case (Clifton Iron Co. v. Dye, 87 Ala. 468, 6 South. 192), the same learned justice cited the above case, and said:

"But it is not every case of nuisance, or continuing trespass, which a court of equity will restrain by injunction. In determining this question, the court should weigh the injury that may accrue to the one or the other party, and also to the public, by granting or refusing the injunction."

These cases have never been overruled. The decision in the case of First Nat. Bk. v. Tyson, 133 Ala. 459, 32 South. 144, 59 L. R. A. 399, 91 Am. St. Rep. 46, is not contrary to the holding in the above cases, but is an application of the rules declared therein. There the injunction was to restrain and prevent a nuisance, not to abate it. In that case, if Tyson had waited until the bank had erected their building, as proposed, before filing his bill, then the court applying the rule of discretion might have denied the relief in equity, and remitted him to an action at law.

In the case of Lewis v. Pingree Nat. Bk., reported in 47 Utah, 35, 151 Pac. 558, L. R. A. 1916C, 1260–1270, the Supreme Court of Utah well points out the difference in the two classes of injunctions; one to prevent a nuisance, the other to abate it. It was there aptly and correctly said:

"In First Nat. Bk. v. Tyson, Tyson brought an action to prohibit the defendant bank from projecting the front of a bank building into the street by erecting or placing pillars in a manner similar to what the defendant has done in the case at bar. The action was, however, commenced before the pillars were erected, and at a time when the defendant could change its plans and construct the front of the building, so as to make it conform to the lot line, without incurring great expense. The court, therefore, issued an injunction requiring the defendant to remove the material which had already been placed in the street, and restrained the defendant from erecting the pillars as proposed. What the court would have done under facts and circumstances like those in the case at bar is left to conjecture merely. We concede, however, that the court would have had the power to order the entire front removed from the street, even though it had been completed; but whether that would have been the order we are not prepared to say."

The same rule is applied to public or private nuisances. This is well shown by a reference to the cases cited, but the English courts have best pointed out the reason for applying the rule of discretion as to abating public nuisances. The House of Lords, in the case of Atty. Gen. v. Sheffield Gas, etc., Co., reported in 19 Eng. Rul. Cases, p. 273, said:

"Now it is said that, however that may be in a case of private nuisance, which was the case to which Lord Eldon was addressing himself, in the case of Attorney General v. Nichol, it. must be different in the case of a public nuisance, and that it is the duty of this court to interfere in all cases of public nuisance. And that argument is enforced by this, that it is said, if the injury be trifling, if the inconvenience be trifling, it will not be a nuisance at law; and, therefore, the interference of this court must take place whenever it is a nuisance at law, because the very fact of its being a nuisance at law imports that the injury is great and the inconvenience consequent. But looking at the principles on which this court interferes, it does not appear to me that there can be any sound distinction between the case of a private nuisance and a public nuisance."

To my mind, to grant the injunction in this case would be doing more injustice than denying it would.

The value of complainant's lot is comparatively small. The weight of the evidence tends to show this valuation not to exceed $350 to $400, occupied by a tenant paying rent in proportion to this valuation.

It very clearly appears that the city authorities encroached upon this street in the erection of public improvements, such as the waterworks plant and the electric lighting system, and also permitted some encroachment by another, under a mistaken view of the lawful right of the city in the premises; and that large sums of money have been expended in these public improvements which are of vital concern to the community dependent thereupon for its supply of water and light. The loss and inconvenience to the public therefore by the abatement of this nuisance would be very great, while the damage to the respondent would be comparatively small.

Complainant at the time of the commencement of these improvements seems to have done no more than to make a mere protest. Had a bill then been filed, before the erection of these valuable improvements, a court of

equity would unquestionably, in the exercise of sound judicial discretion, have granted relief as was done in the Tyson Case, supra. But this was not done. Complainant stood by without taking further action, and, in the exercise of this sound discretion, I am of the opinion that a court of equity should not now render its aid to compel abatement of this expensive work, so vital to the public interest, which the complainant might, by filing a bill within reasonable season, have prevented. McKee v. Grand Rapids, 137 Mich. 212, 100 N. W. 580.

What has here been said discloses, however, that the bill had equity in so far as it showed a nuisance, and, upon its face, a bare legal right in the complainant for its abatement.

[3] The relief is denied for the reasons above stated. In the exercise of sound judicial discretion, I do not think, however, that the bill should have been dismissed, and the complainant put to his remedy in an action at law. The court had acquired jurisdiction, and should have proceeded to a determination of the question of damages, ascertained the same, and ordered the payment thereof, or, in the alternative, the abatement of the nuisance. This was the course pursued by the New Jersey court in the case of Grey v. Mayor, etc., of Paterson, 60 N. J. Eq. 385, 45 Atl. 995, 48 L. R. A. 717, 83 Am. St. Rep. 642, wherein it is said:

"In the case before us the injury to the defendants would be so great that an injunction should not be granted to these complainants whose injury is incidental and comparatively small. If these complainants amend their bill, or file a new bill asking for an injunction, unless the city will consent to make such compensation for the diminution in the value of their lands as shall be ascertained to be just, such equitable relief can be given to them. A court of equity will, to effectuate justice, settle unliquidated damages."

I am of the opinion that no amended bill or new bill is required, for the reason this procedure could be followed under the general prayer for relief. That complainant has suffered some substantial damage to the valuation of his property I am of the opinion quite clearly appears, but the amount thereof can better be ascertained by reference before the register. A somewhat similar course was pursued in Lewis v. Pingree Nat. Bk., supra. See, also, 14 R. C. L. 357–359. I am therefore of the opinion that the bill should not have been dismissed, and that the decree of dismissal should be reversed, and the cause remanded to the court below for further proceedings in accordance with these views.

The respondent gin company has erected a shed in the street upon which the complainant's lot abuts. What is said above is without application to this particular nuisance, and the reasons for the exercise of judicial discretion to exempt such nuisance from the general rule as to abatement of the same do not apply as to this particular respondent. As to this shed, therefore, I think relief should be awarded complainant, and the particular nuisance abated.

SOMERVILLE and GARDNER, JJ., concur in the foregoing views.

SAYRE, J. I concur in what has been written by SOMERVILLE, J., in respect to the manner of review in this cause. Bearing in mind the fact that appellant filed its bill to redress the individual wrong and injury done to it by the nuisance complained of, I concur also in the disposition of the cause indicated in the opinion of MAYFIELD, J. No contract rights are involved (Morris v. Tuskaloosa Mfg. Co., 83 Ala. 565, 3 South. 689; White v. Harrison, 81 South. 565 [4]), and, while the rule established by the great weight of authority is that where the existence of a nuisance is clearly shown, together with the fact that it is causing another substantial injury for which there is no adequate remedy at law, the injured person is entitled, as of right, to an abatement of the nuisance, without reference to the comparative benefits conferred thereby or the comparative injuries resulting therefrom (20 R. C. L. 481); this rule resulting from the legal fact that, if the owner of property affected refuses to treat as permanent a nuisance which is in law and in fact abatable or to be satisfied with one assessment of damages (Sloss-Sheffield Co. v. Mitchell, 161 Ala. 278, 49 South. 851), he is entitled to have, not only the value of his property as it was, but to have the undisturbed use of it and of the street in connection with it, my judgment is that appellant is not entitled to injunctive relief. Complainant's property was and is located on the south side of Seventh street, opposite the south end of Le Grande avenue, which it faces and with which it is of equal width. The relief prayed against the town of Luverne, the sole party defendant to the original bill, was that it be required to remove the obstructions placed by it in Le Grande avenue. Complainant further alleged in his original bill that the town of Luverne, by a contract entered into by it for a term of years with the Crenshaw County Gin Company, had permitted said company to erect a shed over a part of Seventh street which interfered with the free use of that street by the public and greatly damaged complainant. By amendments the bill was made to show that the shed on Seventh street at every rain concentrated the water so as to cause it to flow over and upon complainant's lot, doing injury thereto in several ways, and the Crenshaw Company was brought in as a party defendant. The relief prayed against the added defendant was, in effect, that it be required to remove the shed from the street. The proof showed that this shed was on the north side

[4] 202 Ala. 623.

of Seventh street and adjacent to the east side of Le Grande avenue. The proof also showed, and the chancellor found upon personal inspection, that the flow of water had not been diverted from its natural course. I see no sufficient reason for disturbing the chancellor's conclusion as to that. The question then is whether by reason of any other fact complainant may be entitled to injunctive relief.

The municipal authorities had no right or power to obstruct the streets of the town nor to license any obstruction thereof (Costello v. State, 108 Ala. 45, 18 South. 820, 35 L. R. A. 303), and as against the public—the interested public not by any means being limited to the citizenship of the municipality (Alabama Western R. R. Co. v. State ex rel. Attorney General, 155 Ala. 491, 46 South. 468, 19 L. R. A. [N. S.] 1173, 16 Ann. Cas. 485)—the municipal authorities have not, and, by laches, lapse of time, or any consideration of public or private convenience whatsoever, can never acquire, any right to the continued maintenance of the structures against which the complaint is directed. Webb v. Demopolis, 95 Ala. 116, 13 South. 289, 21 L. R. A. 62. These structures, in my judgment, may at any time, and without regard to the inconvenience involved, be removed on a bill filed by the state or some one acting by its authority. Alabama Western R. R. Co. v. State ex rel. Attorney General, supra; Hoole & Paullin v. Attorney General, 22 Ala. 190. See, also, in this connection, Costello v. State, supra.

The text-books and adjudicated cases are agreed that for an obstruction of a public and common right of way no private action will lie, unless it be alleged and shown that the party complaining has thereby suffered injury peculiar to himself, that is, different in kind and degree from that suffered by the public, and the reason for this rule, accepted from the beginning as sufficient, is that the offender should be punished by indictment as for the maintenance of a common nuisance, or the nuisance be abated by bill in equity in the name of the state; for otherwise suits would be multiplied intolerably. Walls v. Smith, 167 Ala. 138, 52 South. 320, 140 Am. St. Rep. 24, where text-writers and adjudicated cases are cited. In Sloss-Sheffield Co. v. McLaughlin, 173 Ala. 76, 55 South. 522, it was said that, in the practical solution of the question as to peculiar injury alleged to be the result of circuity of travel caused by an obstruction in a public highway, everything depends upon how far the obstruction may be away from the complainant's property, what may be on the other side, and, in short, upon the relations developed by use between complainant's property and the transobstruction country. On the evidence in this case I find that Le Grande avenue, though dedicated to the public upon the laying out

of the town of Luverne, has never been kept up as a public thoroughfare, that no relation between complainant's property and those parts in the vicinity of the avenue and beyond the obstructions complained of has ever been established through or by means of the avenue, and that complainant has therefore suffered no peculiar injury by reason of these obstructions. As to the shed, it does not at all affect access to or egress from complainant's property, nor does it in the least affect intercommunication between complainant's property and any other place or places whatever. Nothing remains, then, but the question of view. It is not the purpose of the law to protect unlimited view along public streets or highways. The view which the courts protect is not the view which answers the desire for beauty or the demands of an æsthetic taste, but it is the view which affects the practical utility or comfort of property as a place of business or residence. I find on the evidence that the view from complainant's property is not affected in a legal sense by the obstructions in question, and therefore that he is not entitled to relief on that ground.

[4] For the reasons stated, my opinion is that complainant's bill was properly dismissed, and that the decree should be affirmed.